Justice KAGAN delivered the opinion of the Court.
The Armed Career Criminal Act (ACCA or Act), 18 U.S.C. § 924(e), imposes a 15-year mandatory minimum sentence on certain federal defendants who have three prior convictions for a "violent felony," including "burglary, arson, or extortion." To determine whether a past conviction is for one of those offenses, courts compare the elements of the crime of conviction with the elements of the "generic" version of the listed offense-i.e., the offense as commonly understood. For more than 25 years, our decisions have held that the prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense. The question in this case is *2248 whether ACCA makes an exception to that rule when a defendant is convicted under a statute that lists multiple, alternative means of satisfying one (or more) of its elements. We decline to find such an exception.
I
A
ACCA prescribes a 15-year mandatory minimum sentence if a defendant is convicted of being a felon in possession of a firearm following three prior convictions for a "violent felony." § 924(e)(1). (Absent that sentence enhancement, the felon-in-possession statute sets a 10-year maximum penalty. See § 924(a)(2).) ACCA defines the term "violent felony" to include any felony, whether state or federal, that "is burglary, arson, or extortion." § 924(e)(2)(B)(ii). In listing those crimes, we have held, Congress referred only to their usual or (in our terminology) generic versions-not to all variants of the offenses. See Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). That means as to burglary-the offense relevant in this case-that Congress meant a crime "contain[ing] the following elements: an unlawful or unprivileged entry into ... a building or other structure, with intent to commit a crime." Ibid.
To determine whether a prior conviction is for generic burglary (or other listed crime) courts apply what is known as the categorical approach: They focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case. See id., at 600-601, 110 S.Ct. 2143. Distinguishing between elements and facts is therefore central to ACCA's operation. "Elements" are the "constituent parts" of a crime's legal definition-the things the "prosecution must prove to sustain a conviction." Black's Law Dictionary 634 (10th ed. 2014). At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant, see Richardson v. United States, 526 U.S. 813, 817, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) ; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty, see McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Facts, by contrast, are mere real-world things-extraneous to the crime's legal requirements. (We have sometimes called them "brute facts" when distinguishing them from elements. Richardson, 526 U.S., at 817, 119 S.Ct. 1707.) They are "circumstance[s]" or "event[s]" having no "legal effect [or] consequence": In particular, they need neither be found by a jury nor admitted by a defendant. Black's Law Dictionary 709. And ACCA, as we have always understood it, cares not a whit about them. See, e.g., Taylor, 495 U.S., at 599-602, 110 S.Ct. 2143. A crime counts as "burglary" under the Act if its elements are the same as, or narrower than, those of the generic offense. But if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA "burglary"-even if the defendant's actual conduct (i.e., the facts of the crime) fits within the generic offense's boundaries.
The comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or "indivisible") set of elements to define a single crime. The court then lines up that crime's elements alongside those of the generic offense and sees if they match. So, for example, this Court found that a California statute swept more broadly than generic burglary because it criminalized entering a location (even if lawfully) with the intent to steal, and thus encompassed mere shoplifting. See *2249 id., at 591, 110 S.Ct. 2143 ; Descamps v. United States, 570 U.S. ----, ---- - ----, 133 S.Ct. 2276, 2283-2284, 186 L.Ed.2d 438 (2013). Accordingly, no conviction under that law could count as an ACCA predicate, even if the defendant in fact made an illegal entry and so committed burglary in its generic form. See id., at ---- - ----, 133 S.Ct., at 2292-2293.
Some statutes, however, have a more complicated (sometimes called "divisible") structure, making the comparison of elements harder. Id., at ----, 133 S.Ct., at 2283. A single statute may list elements in the alternative, and thereby define multiple crimes. Suppose, for example, that the California law noted above had prohibited "the lawful entry or the unlawful entry" of a premises with intent to steal, so as to create two different offenses, one more serious than the other. If the defendant were convicted of the offense with unlawful entry as an element, then his crime of conviction would match generic burglary and count as an ACCA predicate; but, conversely, the conviction would not qualify if it were for the offense with lawful entry as an element. A sentencing court thus requires a way of figuring out which of the alternative elements listed-lawful entry or unlawful entry-was integral to the defendant's conviction (that is, which was necessarily found or admitted). See id., at ----, 133 S.Ct., at 2283. To address that need, this Court approved the "modified categorical approach" for use with statutes having multiple alternative elements. See, e.g., Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of. See ibid. ; Taylor, 495 U.S., at 602, 110 S.Ct. 2143. The court can then compare that crime, as the categorical approach commands, with the relevant generic offense.
This case concerns a different kind of alternatively phrased law: not one that lists multiple elements disjunctively, but instead one that enumerates various factual means of committing a single element. See generally Schad v. Arizona, 501 U.S. 624, 636, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion) ("[L]egislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes"). To use a hypothetical adapted from two of our prior decisions, suppose a statute requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. See Descamps, 570 U.S., at ----, 133 S.Ct., at 2289 ; Richardson, 526 U.S., at 817, 119 S.Ct. 1707. Because that kind of list merely specifies diverse means of satisfying a single element of a single crime-or otherwise said, spells out various factual ways of committing some component of the offense-a jury need not find (or a defendant admit) any particular item: A jury could convict even if some jurors "conclude[d] that the defendant used a knife" while others "conclude[d] he used a gun," so long as all agreed that the defendant used a "deadly weapon." Ibid. ; see Descamps, 570 U.S., at ----, 133 S.Ct., at 2288 (describing means, for this reason, as "legally extraneous circumstances"). And similarly, to bring the discussion back to burglary, a statute might-indeed, as soon discussed, Iowa's burglary law does-itemize the various places that crime could occur as disjunctive factual scenarios rather than separate elements, so that a jury need not make any specific findings (or a defendant admissions) on that score.
*2250 The issue before us is whether ACCA treats this kind of statute as it does all others, imposing a sentence enhancement only if the state crime's elements correspond to those of a generic offense-or instead whether the Act makes an exception for such a law, so that a sentence can be enhanced when one of the statute's specified means creates a match with the generic offense, even though the broader element would not.
B
Petitioner Richard Mathis pleaded guilty to being a felon in possession of a firearm. See § 922(g). At sentencing, the Government asked the District Court to impose ACCA's 15-year minimum penalty based on Mathis's five prior convictions for burglary under Iowa law.
Iowa's burglary statute, all parties agree, covers more conduct than generic burglary does. See Brief for Petitioner 36; Brief for United States 44. The generic offense requires unlawful entry into a "building or other structure." Taylor, 495 U.S., at 598, 110 S.Ct. 2143 ; supra, at 2248. Iowa's statute, by contrast, reaches a broader range of places: "any building, structure, [or] land, water, or air vehicle ." Iowa Code § 702.12 (2013) (emphasis added). And those listed locations are not alternative elements, going toward the creation of separate crimes. To the contrary, they lay out alternative ways of satisfying a single locational element, as the Iowa Supreme Court has held: Each of the terms serves as an "alternative method of committing [the] single crime" of burglary, so that a jury need not agree on which of the locations was actually involved. State v. Duncan, 312 N.W.2d 519, 523 (Iowa 1981) ; see State v. Rooney, 862 N.W.2d 367, 376 (Iowa 2015) (discussing the single "broadly phrased ... element of place" in Iowa's burglary law). In short, the statute defines one crime, with one set of elements, broader than generic burglary-while specifying multiple means of fulfilling its locational element, some but not all of which (i.e., buildings and other structures, but not vehicles) satisfy the generic definition.
The District Court imposed an ACCA enhancement on Mathis after inspecting the records of his prior convictions and determining that he had burgled structures, rather than vehicles. See App. 34-35. The Court of Appeals for the Eighth Circuit affirmed. 786 F.3d 1068 (2015). It acknowledged that Iowa's burglary statute, by covering vehicles in addition to structures, swept more broadly than generic burglary. See id., at 1074. But it noted that if structures and vehicles were separate elements, each part of a different crime, then a sentencing court could invoke the modified categorical approach and look to old record materials to see which of those crimes the defendant had been convicted of. See id., at 1072-1074. And the Court of Appeals thought nothing changed if structures and vehicles were not distinct elements but only alternative means: "Whether [such locations] amount to alternative elements or merely alternative means to fulfilling an element," the Eighth Circuit held, a sentencing court "must apply the modified categorical approach" and inspect the records of prior cases. Id., at 1075. If the court found from those materials that the defendant had in fact committed the offense in a way that satisfied the definition of generic burglary-here, by burgling a structure rather than a vehicle-then the court should treat the conviction as an ACCA predicate. And that was so, the Court of Appeals stated, even though the elements of the crime of conviction, in encompassing both types of locations, were broader than those of the relevant generic offense. See id., at 1074-1075. In this circumstance, the court *2251 thus found, ACCA's usual elements-based inquiry would yield to a facts-based one.
That decision added to a Circuit split over whether ACCA's general rule-that a defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense-gives way when a statute happens to list various means by which a defendant can satisfy an element.[1] We granted certiorari to resolve that division, 577 U.S. ----, 136 S.Ct. 894, 193 L.Ed.2d 788 (2016), and now reverse.
II
A
As just noted, the elements of Mathis's crime of conviction (Iowa burglary) cover a greater swath of conduct than the elements of the relevant ACCA offense (generic burglary). See supra, at 2249 - 2250. Under our precedents, that undisputed disparity resolves this case. We have often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense. See, e.g., Taylor, 495 U.S., at 602, 110 S.Ct. 2143. How a given defendant actually perpetrated the crime-what we have referred to as the "underlying brute facts or means" of commission, Richardson, 526 U.S., at 817, 119 S.Ct. 1707 -makes no difference; even if his conduct fits within the generic offense, the mismatch of elements saves the defendant from an ACCA sentence. Those longstanding principles, and the reasoning that underlies them, apply regardless of whether a statute omits or instead specifies alternative possible means of commission. The itemized construction gives a sentencing court no special warrant to explore the facts of an offense, rather than to determine the crime's elements and compare them with the generic definition.
Taylor set out the essential rule governing ACCA cases more than a quarter century ago. All that counts under the Act, we held then, are "the elements of the statute of conviction." 495 U.S., at 601, 110 S.Ct. 2143. So, for example, the label a State assigns to a crime-whether "burglary," "breaking and entering," or something else entirely-has no relevance to whether that offense is an ACCA predicate. See id., at 590-592, 110 S.Ct. 2143. And more to the point here: The same is true of "the particular facts underlying [the prior] convictions"-the means by which the defendant, in real life, committed his crimes. Id., at 600, 110 S.Ct. 2143. That rule can seem counterintuitive: In some cases, a sentencing judge knows (or can easily discover) that the defendant carried out a "real" burglary, even though the crime of conviction also extends to other conduct. No matter. Under ACCA, Taylor stated, it is impermissible for "a particular crime [to] sometimes count towards enhancement and sometimes not, depending on the facts of the case." Id., at 601, 110 S.Ct. 2143. Accordingly, a sentencing judge may look only to "the elements of the [offense], not to the facts of [the] defendant's conduct." Ibid .
That simple point became a mantra in our subsequent ACCA decisions.[2] At the *2252 risk of repetition (perhaps downright tedium), here are some examples. In Shepard : ACCA "refers to predicate offenses in terms not of prior conduct but of prior 'convictions' and the 'element[s]' of crimes." 544 U.S., at 19, 125 S.Ct. 1254 (alteration in original). In James v. United States : "[W]e have avoided any inquiry into the underlying facts of [the defendant's] particular offense, and have looked solely to the elements of [burglary] as defined by [state] law." 550 U.S. 192, 214, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). In Sykes v. United States : "[W]e consider [only] the elements of the offense [,] without inquiring into the specific conduct of this particular offender." 564 U.S. 1, 7, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011) (quoting James, 550 U.S., at 202, 127 S.Ct. 1586 ; emphasis in original). And most recently (and tersely) in Descamps : "The key [under ACCA] is elements, not facts." 570 U.S., at ----, 133 S.Ct., at 2283.
Our decisions have given three basic reasons for adhering to an elements-only inquiry. First, ACCA's text favors that approach. By enhancing the sentence of a defendant who has three "previous convictions" for generic burglary, § 924(e)(1) -rather than one who has thrice committed that crime-Congress indicated that the sentencer should ask only about whether "the defendant had been convicted of crimes falling within certain categories," and not about what the defendant had actually done. Taylor, 495 U.S., at 600, 110 S.Ct. 2143. Congress well knows how to instruct sentencing judges to look into the facts of prior crimes: In other statutes, using different language, it has done just that. See United States v. Hayes, 555 U.S. 415, 421, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009) (concluding that the phrase "an offense ... committed" charged sentencers with considering non-elemental facts); Nijhawan v. Holder, 557 U.S. 29, 36, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009) (construing an immigration statute to "call[ ] for a 'circumstance-specific,' not a 'categorical' interpretation"). But Congress chose another course in ACCA, focusing on only "the elements of the statute of conviction." Taylor, 495 U.S., at 601, 110 S.Ct. 2143.
Second, a construction of ACCA allowing a sentencing judge to go any further would raise serious Sixth Amendment concerns. This Court has held that only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction. See Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). That means a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense. See Shepard, 544 U.S., at 25, 125 S.Ct. 1254 (plurality opinion); id., at 28, 125 S.Ct. 1254 (THOMAS, J., concurring in part and concurring in judgment) (stating that such an approach would amount to "constitutional error"). He is prohibited from conducting such an inquiry himself; and so too he is barred from making a disputed determination about "what the defendant and state judge must have understood as the factual basis of the prior plea" or "what the jury in a prior trial must have accepted as the theory of the crime." See id., at 25, 125 S.Ct. 1254 (plurality opinion); Descamps, 570 U.S., at ----, 133 S.Ct., at 2288. He can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.
*2253 And third, an elements-focus avoids unfairness to defendants. Statements of "non-elemental fact" in the records of prior convictions are prone to error precisely because their proof is unnecessary. Id., at ----, 133 S.Ct., at 2288-2289. At trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law; to the contrary, he "may have good reason not to"-or even be precluded from doing so by the court. Ibid. When that is true, a prosecutor's or judge's mistake as to means, reflected in the record, is likely to go uncorrected. See ibid.[3] Such inaccuracies should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence.
Those three reasons stay as strong as ever when a statute, instead of merely laying out a crime's elements, lists alternative means of fulfilling one (or more) of them. ACCA's use of the term "convictions" still supports an elements-based inquiry; indeed, that language directly refutes an approach that would treat as consequential a statute's reference to factual circumstances not essential to any conviction. Similarly, the Sixth Amendment problems associated with a court's exploration of means rather than elements do not abate in the face of a statute like Iowa's: Whether or not mentioned in a statute's text, alternative factual scenarios remain just that-and so remain off-limits to judges imposing ACCA enhancements. And finally, a statute's listing of disjunctive means does nothing to mitigate the possible unfairness of basing an increased penalty on something not legally necessary to a prior conviction. Whatever the statute says, or leaves out, about diverse ways of committing a crime makes no difference to the defendant's incentives (or lack thereof) to contest such matters.
For these reasons, the court below erred in applying the modified categorical approach to determine the means by which Mathis committed his prior crimes. 786 F.3d, at 1075. ACCA, as just explained, treats such facts as irrelevant: Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence. And indeed, our cases involving the modified categorical approach have already made exactly that point. "[T]he only [use of that approach] we have ever allowed," we stated a few Terms ago, is to determine "which element[s] played a part in the defendant's conviction." Descamps, 570 U.S., at ----, ----, 133 S.Ct., at 2283, 2285 (emphasis added); see Taylor, 495 U.S., at 602, 110 S.Ct. 2143 (noting that the modified approach may be employed only to determine whether "a jury necessarily had to find" each element of generic burglary). In other words, the modified approach serves-and serves solely-as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque. See *2254 Descamps, 570 U.S., at ----, 133 S.Ct., at 2285.[4] It is not to be repurposed as a technique for discovering whether a defendant's prior conviction, even though for a too-broad crime, rested on facts (or otherwise said, involved means) that also could have satisfied the elements of a generic offense.
B
The Government and Justice BREYER claim that our longtime and exclusive focus on elements does not resolve this case because (so they say) when we talked about "elements," we did not really mean it. "[T]he Court used 'elements,' " the Government informs us, "not to distinguish between 'means' and 'elements,' " but instead to refer to whatever the statute lists-whether means or elements. Brief for United States 8; see id., at 19. In a similar vein, Justice BREYER posits that every time we said the word "element," we "used the word generally, simply to refer to the matter at issue," without "intend[ing] to set forth a generally applicable rule." Post, at 2265 (dissenting opinion).
But a good rule of thumb for reading our decisions is that what they say and what they mean are one and the same; and indeed, we have previously insisted on that point with reference to ACCA's elements-only approach. In Descamps, the sole dissenting Justice made an argument identical to the one now advanced by the Government and Justice BREYER: that our prior caselaw had not intended to distinguish between statutes listing alternative elements and those setting out "merely alternative means" of commission. 570 U.S., at ----, 133 S.Ct., at 2298 (opinion of ALITO, J.).[5] The Court rejected that contention, stating that "[a]ll those decisions rested on the explicit premise that the laws contain[ed] statutory phrases that cover several different crimes, not several different methods of committing one offense"-in other words, that they listed *2255 alternative elements, not alternative means. Id., at ----, n. 2, 133 S.Ct., at 2285, n. 2 (ellipsis and internal quotation marks omitted); see, e.g., Johnson v. United States, 559 U.S. 133, 144, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) ; Nijhawan, 557 U.S., at 35, 129 S.Ct. 2294. That premise was important, we explained, because an ACCA penalty may be based only on what a jury "necessarily found" to convict a defendant (or what he necessarily admitted). Descamps, 570 U.S., at ----, ----, 133 S.Ct., at 2287, 2290. And elements alone fit that bill; a means, or (as we have called it) "non-elemental fact," is "by definition[ ] not necessary to support a conviction." Id., at ----, n. 3, ----, 133 S.Ct., at 2286, n. 3, 2288 ; see supra, at 2248.[6] Accordingly, Descamps made clear that when the Court had earlier said (and said and said) "elements," it meant just that and nothing else.
For that reason, this Court (including Justice BREYER) recently made clear that a court may not look behind the elements of a generally drafted statute to identify the means by which a defendant committed a crime. See Descamps, 570 U.S., at ----, 133 S.Ct., at 2282-2282. Consider if Iowa defined burglary as involving merely an unlawful entry into a "premises"-without any further elaboration of the types of premises that exist in the world (e.g., a house, a building, a car, a boat). Then, all agree, ACCA's elements-focus would apply. No matter that the record of a prior conviction clearly indicated that the defendant burgled a house at 122 Maple Road-and that the jury found as much; because Iowa's (hypothetical) law included an element broader than that of the generic offense, the defendant could not receive an ACCA sentence. Were that not so, this Court stated, "the categorical approach [would be] at an end"; the court would merely be asking "whether a particular set of facts leading to a conviction conforms to a generic ACCA offense." Id., at ----, 133 S.Ct., at 2291. That conclusion is common ground, and must serve as the baseline for anything Justice BREYER (or the Government) here argues.
And contrary to his view, that baseline not only begins but also ends the analysis, because nothing material changes if Iowa's law further notes (much as it does) that a "premises" may include "a house, a building, a car, or a boat." That fortuity of legislative drafting affects neither the oddities *2256 of applying the categorical approach nor the reasons for doing so. On the one hand, a categorical inquiry can produce the same counter-intuitive consequences however a state law is written. Whether or not the statute lists various means of satisfying the "premises" element, the record of a prior conviction is just as likely to make plain that the defendant burgled that house on Maple Road and the jury knew it. On the other hand (and as already shown), the grounds-constitutional, statutory, and equitable-that we have offered for nonetheless using the categorical approach lose none of their force in the switch from a generally phrased statute (leaving means implicit) to a more particular one (expressly enumerating them). See supra, at 2253. In every relevant sense, both functional and legal, the two statutes-one saying just "premises," the other listing structures and vehicles-are the same. And so the same rule must apply: ACCA disregards the means by which the defendant committed his crime, and looks only to that offense's elements.
C
The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means. If they are elements, the court should do what we have previously approved: review the record materials to discover which of the enumerated alternatives played a part in the defendant's prior conviction, and then compare that element (along with all others) to those of the generic crime. See ibid. But if instead they are means, the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution. Given ACCA's indifference to how a defendant actually committed a prior offense, the court may ask only whether the elements of the state crime and generic offense make the requisite match.
This threshold inquiry-elements or means?-is easy in this case, as it will be in many others. Here, a state court decision definitively answers the question: The listed premises in Iowa's burglary law, the State Supreme Court held, are "alternative method[s]" of committing one offense, so that a jury need not agree whether the burgled location was a building, other structure, or vehicle. See Duncan, 312 N.W.2d, at 523 ; supra, at 2250. When a ruling of that kind exists, a sentencing judge need only follow what it says. See Schad, 501 U.S., at 636, 111 S.Ct. 2491 (plurality opinion). Likewise, the statute on its face may resolve the issue. If statutory alternatives carry different punishments, then under Apprendi they must be elements. See, e.g., Colo.Rev.Stat. § 18-4-203 (2015) ; Vt. Stat. Ann., Tit. 13, § 1201 (Cum. Supp. 2015); see also 530 U.S., at 490, 120 S.Ct. 2348 (requiring a jury to agree on any circumstance increasing a statutory penalty); supra, at 2252. Conversely, if a statutory list is drafted to offer "illustrative examples," then it includes only a crime's means of commission. United States v. Howard, 742 F.3d 1334, 1348 (C.A.11 2014) ; see United States v. Cabrera-Umanzor, 728 F.3d 347, 353 (C.A.4 2013). And a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means). See, e.g., Cal.Penal Code Ann. § 952 (West 2008). Armed with such authoritative sources of state law, federal sentencing courts can readily determine the nature of an alternatively phrased list.
And if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself. As Judge Kozinski has explained, such a "peek at the [record] documents" is for "the sole and limited purpose of determining whether [the listed items *2257 are] element[s] of the offense." Rendon v. Holder, 782 F.3d 466, 473-474 (C.A.9 2015) (opinion dissenting from denial of reh'g en banc).[7] (Only if the answer is yes can the court make further use of the materials, as previously described, see supra, at 2253 - 2254.) Suppose, for example, that one count of an indictment and correlative jury instructions charge a defendant with burgling a "building, structure, or vehicle"-thus reiterating all the terms of Iowa's law. That is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. So too if those documents use a single umbrella term like "premises": Once again, the record would then reveal what the prosecutor has to (and does not have to) demonstrate to prevail. See Descamps, 570 U.S., at ----, 133 S.Ct., at 2290. Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime. Of course, such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy "Taylor 's demand for certainty" when determining whether a defendant was convicted of a generic offense. Shepard, 544 U.S., at 21, 125 S.Ct. 1254. But between those documents and state law, that kind of indeterminacy should prove more the exception than the rule.
III
Our precedents make this a straightforward case. For more than 25 years, we have repeatedly made clear that application of ACCA involves, and involves only, comparing elements. Courts must ask whether the crime of conviction is the same as, or narrower than, the relevant generic offense. They may not ask whether the defendant's conduct-his particular means of committing the crime-falls within the generic definition. And that rule does not change when a statute happens to list possible alternative means of commission: Whether or not made explicit, they remain what they ever were-just the facts, which ACCA (so we have held, over and over) does not care about.
Some have raised concerns about this line of decisions, and suggested to Congress that it reconsider how ACCA is written. See, e.g., Chambers v. United States, 555 U.S. 122, 133, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (ALITO, J., concurring in judgment); Descamps, 570 U.S., at ----, 133 S.Ct., at 2293-2294 (KENNEDY, J., concurring). But whether for good or for ill, the elements-based approach remains the law. And we will not introduce inconsistency and arbitrariness into our ACCA decisions by here declining to follow its requirements. Everything this Court has ever said about ACCA runs counter to the Government's position. That alone is sufficient reason to reject it: Coherence has a claim on the law.
Because the elements of Iowa's burglary law are broader than those of generic burglary, Mathis's convictions under that law cannot give rise to an ACCA sentence. We accordingly reverse the judgment of the Court of Appeals.
It is so ordered.

Compare 786 F.3d 1068 (C.A.8 2015) (case below) (recognizing such an exception); United States v. Ozier, 796 F.3d 597 (C.A.6 2015) (same); United States v. Trent, 767 F.3d 1046 (C.A.10 2014) (same), with Rendon v. Holder, 764 F.3d 1077 (C.A.9 2014) (rejecting that exception); Omargharib v. Holder, 775 F.3d 192 (C.A.4 2014) (same).

So too in our decisions applying the categorical approach outside the ACCA context-most prominently, in immigration cases. See, e.g., Kawashima v. Holder, 565 U.S. 478, 482-483, 132 S.Ct. 1166, 182 L.Ed.2d 1 (2012) (stating that a judge must look to the "formal element[s] of a conviction[,] rather than to the specific facts underlying the crime," in deciding whether to deport an alien for committing an "aggravated felony").

To see the point most clearly, consider an example arising in the immigration context: A defendant charged under a statute that criminalizes "intentionally, knowingly, or recklessly" assaulting another-as exists in many States, see, e.g., Tex. Penal Code Ann. § 22.01(a)(1) (West Cum. Supp. 2015)-has no apparent reason to dispute a prosecutor's statement that he committed the crime intentionally (as opposed to recklessly) if those mental states are interchangeable means of satisfying a single mens rea element. But such a statement, if treated as reliable, could make a huge difference in a deportation proceeding years in the future, because an intentional assault (unlike a reckless one) qualifies as a "crime involving moral turpitude," and so requires removal from the country. See In re Gomez-Perez, No. A200-958-511, p. 2 (BIA 2014).

Descamps made the point at some length, adding that the modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates 'several different ... crimes.' If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of. That is the job, as we have always understood it, of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense." 570 U.S., at ----, 133 S.Ct., at 2285 (citation omitted).

In another solo dissent, Justice ALITO today switches gears, arguing not that our precedent is consistent with his means-based view, but instead that all of our ACCA decisions are misguided because all follow from an initial wrong turn in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). See post, at 2267 - 2268. To borrow the driving metaphor of his own dissent, Justice ALITO thus locates himself entirely off the map of our caselaw. But that is not surprising; he has harshly criticized the categorical approach (and Apprendi too) for many years. See, e.g., Johnson v. United States, 576 U.S. ----, ---- - ----, 135 S.Ct. 2551, 2577-2580, 192 L.Ed.2d 569 (2015) (ALITO, J., dissenting); Descamps, 570 U.S., at ---- - ----, 133 S.Ct., at 2296-2297 (ALITO, J., dissenting); Moncrieffe v. Holder, 569 U.S. ----, ---- - ----, 133 S.Ct. 1678, 1700-1701, 185 L.Ed.2d 727 (2013) (Alito, J., dissenting); Chambers v. United States, 555 U.S. 122, 132-134, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (ALITO, J., concurring in judgment); see also Hurst v. Florida, 577 U.S. ----, ----, 136 S.Ct. 616, 625, 193 L.Ed.2d 504 (2016) (ALITO, J., dissenting); Alleyne v. United States, 570 U.S. ----, ---- - ----, 133 S.Ct. 2151, 2172-2173, 186 L.Ed.2d 314 (2013) (ALITO, J., dissenting).

Justice BREYER's dissent rests on the idea that, contrary to that long-accepted definition, a jury sometimes does "necessarily ha[ve] to find" a means of commission, see post, at 2260 (quoting Taylor, 495 U.S., at 602, 110 S.Ct. 2143 )-but Descamps specifically refuted that argument too. In that case, Justice ALITO made the selfsame claim: A jury, he averred, should be treated as having "necessarily found" any fact, even though non-elemental, that a later sentencing court can "infer [ ]" that the jury agreed on "as a practical matter." 570 U.S., at ----, 133 S.Ct., at 2303 (ALITO, J., dissenting). The Court rejected that view, explaining that its ACCA decisions had always demanded that a jury necessarily agree as a legal matter -which meant on elements and not on means. See id., at 2252 , n. 3, 133 S.Ct., at 2286, n. 3. The requirement, from the Court's earliest decisions, was that a judge could impose a 15-year sentence based only on a legal "certainty," not on his inference (however reasonable in a given case) about what a prior factfinder had thought. Shepard, 544 U.S., at 23, 125 S.Ct. 1254 ; see Taylor, 495 U.S., at 602, 110 S.Ct. 2143 ; supra, at 2252. Or otherwise said, the relevant question was whether a defendant was legally convicted of a certain offense (with a certain set of elements), not whether a sentencing judge believes that the factfinder would have convicted him of that offense had it been on the books. See Carachuri-Rosendo v. Holder, 560 U.S. 563, 576, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010) (rejecting such a "hypothetical" approach given a similar statute's directive to "look to the conviction itself").

Descamps previously recognized just this way of discerning whether a statutory list contains means or elements. See 570 U.S., at ----, n. 2, 133 S.Ct., at 2285, n. 2. The Court there noted that indictments, jury instructions, plea colloquies and plea agreements will often "reflect the crime's elements" and so can reveal-in some cases better than state law itself-whether a statutory list is of elements or means. Ibid. Accordingly, when state law does not resolve the means-or-elements question, courts should "resort[ ] to the [record] documents" for help in making that determination. Ibid.