RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0021p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

YAQOB TAFAN THOMAS,

> *Petitioner-Appellant,*

*v.*

JOSEPH P. MEKO, Warden,

> *Respondent-Appellee.*

No. 17-5824

─────────────

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:11-cv-00148—William O. Bertelsman, District Judge.

Argued: December 6, 2018

Decided and Filed: February 14, 2019

Before: COLE, Chief Judge; GRIFFIN and KETHLEDGE, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Kevin M. Lamb, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant. James C. Shackelford, OFFICE OF THE ATTORNEY GENERAL OF KENTUCKY, Frankfort, Kentucky, for Appellee. **ON BRIEF:** Kevin M. Lamb, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant. James C. Shackelford, OFFICE OF THE ATTORNEY GENERAL OF KENTUCKY, Frankfort, Kentucky, for Appellee.

─────────────

## OPINION

─────────────

KETHLEDGE, Circuit Judge. Yaqob Thomas was convicted of murder in Kentucky state court. He now seeks federal habeas relief, arguing that the Kentucky definition of murder

violates due process because it prescribes two mental states—intent to kill and extreme indifference to human life—as alternative means for the mens rea element of that offense. The district court rejected that argument, and so do we.

## I.

In 2002, Thomas and Gregory Baltimore arranged to buy cocaine from Dionte Burdette at a Waffle House in Lexington, Kentucky. The three men ate a meal and then got into Burdette's car, with Thomas in the back seat and the others up front. Soon Thomas grabbed Burdette from behind, held a gun to his head, and demanded the cocaine. When Burdette refused, Thomas shot him in the leg. Burdette then said the cocaine was across the street with his partner. Thomas shot Burdette three more times, after which both Thomas and Baltimore fled from the scene. Burdette died soon afterward.

Thomas was thereafter charged with murder, and a jury found him guilty. The trial court sentenced him to 40 years' imprisonment. The Kentucky Court of Appeals affirmed, and the Kentucky courts otherwise denied post-conviction relief.

Thomas later filed a petition for a writ of habeas corpus in the district court. Among his claims was that his appellate counsel had been ineffective for failing to challenge the trial court's instruction to the jury on the murder charge. The district court found the petition untimely, but we reversed. On remand, the district court rejected Thomas's claims on the merits. This appeal followed.

## II.

Thomas's only claim here is that his appellate counsel was ineffective for failing to argue that one of the trial court's jury instructions had violated due process. We review the district court's denial of relief on that claim de novo. *See Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The State argues that Thomas's claim is procedurally defaulted, but we cut to the merits because an analysis of cause and prejudice would only complicate this case. *See Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011).

The instruction at issue concerned the mental state required to commit murder. Kentucky law recites two mental states—intent to kill and extreme indifference to human life—as alternative means that satisfy the element of mens rea for murder. *See Craft v. Commonwealth*, 483 S.W.3d 837, 841-42 (Ky. 2016); KRS § 507.020. That recitation is unremarkable: "legislatures frequently enumerate alternate means of committing a crime." *Schad v. Arizona*, 501 U.S. 624, 636 (1991) (plurality opinion). Accordingly, the trial court instructed the jury that it could convict Thomas of murder if it found that Thomas had possessed either of the alternative mental states (intent to kill or extreme indifference to human life) that satisfied the element of mens rea for murder.

When a statute specifies alternative means for satisfying a single element of an offense, the jury need not agree upon or even specify which of those means the defendant employed. *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). Thus, if a statute required use of a "deadly weapon" as an element of a crime, and further provided that "use of a 'knife, gun, bat, or similar weapon'" would qualify, then a "jury could convict even if some jurors 'concluded that the defendant used a knife while others concluded he used a gun'"—so long as they all agreed that the element was met. *Id.* (brackets omitted). Accordingly, the trial court here did not instruct the jury that it needed to agree unanimously as to which of the two alternative mental states Thomas had possessed.

Thomas's claim therefore is not really an instructional one; instead his real complaint lies with the Kentucky legislature's definition of murder. Specifically, Thomas says the definition violated due process to the extent it treated intent to kill and extreme indifference to human life as alternative means for the mens rea element of murder. That complaint faces significant constitutional headwinds: a legislature's decision to treat certain facts (here, certain states of mind) as alternative means to satisfy a single element—as opposed to separate elements for separate crimes—is a "value choice[] more appropriately made in the first instance by a legislature than by a court." *Schad*, 501 U.S. at 638 (plurality opinion). Yet those value choices are subject to "the constitutional bounds of fundamental fairness and rationality." *Id.* at 645. To determine whether the Kentucky legislature passed those bounds here, we consider history, the practice of other states, and whether the means are reasonably similar in moral culpability.

*See id.* at 637 (plurality).   In doing so, however, we recognize "a threshold presumption of legislative competence to determine the appropriate relationship between means and ends in defining the elements of a crime."  *Id*. at 637-38.

The Kentucky legislature acted well within constitutional bounds here.  The traditional common-law definition of murder included—as alternatives for the element of mens rea—the equivalents of intent to kill and extreme indifference to human life.  *See id*. at 648 (Scalia, J., concurring); *see also* LaFave, 2 Subst. Crim. L. § 14.1 (3d ed.).  And many reasonable minds—including Blackstone and the drafters of the Model Penal Code—have viewed intent to kill and extreme indifference to human life as equally culpable mental states.   4 W. Blackstone, Commentaries 198-200; Model Penal Code § 210.2 ("criminal homicide constitutes murder when . . . it is committed purposely or knowingly . . . [or] it is committed recklessly under circumstances manifesting extreme indifference to the value of human life").  Indeed the *reason* that the plurality in *Schad* recognized felony murder as reasonably equivalent to premeditated murder is that the felony murderer may be "utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim[.]"  *Schad*, 501 U.S. at 644 (internal quotation marks omitted); *see also Tison v. Arizona*, 481 U.S. 137, 157 (1987) (same).  What matters for purposes of culpability, then, is the indifference, not the concomitant felony.  The alternative means of "extreme indifference" was therefore constitutional here.

Thomas contends the Kentucky definition of murder is irrational nonetheless, because most other states treat extreme indifference to human life as grounds for second-degree murder, not first.  But the Constitution does not mandate adoption of a Uniform Penal Code.  *See Martin v. Ohio*, 480 U.S. 228, 236 (1987) (the constitutionality of a state's criminal law is not determined "by cataloging the practices of other states"); *Patterson v. New York*, 432 U.S. 197, 210-11 (1977) (same).  And here, for the reasons stated above, the Kentucky definition of murder stands on solid historical and moral ground.

Thomas's remaining arguments are insubstantial.   Thomas says that Kentucky's definition  of murder is irrational because, he says, intent to kill and extreme indifference to human life are mutually exclusive mental states.  But that hardly matters; due process does not require the jurors' findings as to alternative means for an element to be factually consistent with

each other.  *See Mathis*, 136 S. Ct. at 2249; *Schad*, 501 U.S. at 649-50 (Scalia, J., concurring). Thomas also says that Kentucky's definition made the prosecution's burden of proof at trial too easy, by allowing the jury to choose between two mental states rather than one.  But the same was true in *Schad*—or (more generally) in any case where a criminal statute prescribes alternative means for a single element.  *See, e.g., Mathis*, 136 S. Ct. at 2249.  Thomas further contends that, if the jury had been forced to agree upon a single mental state, the jury might have deliberated longer than it did—in which case, he says, it might have convicted him only of some lesser offense.  But due process ensures minimum "procedural safeguards," not maximum jury deliberation.  *See Patterson*, 432 U.S. at 210.

Finally, Thomas argues that Kentucky's definition of murder violates the rule that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  But the fact that the jury needed to find here was that Thomas either intended to kill his victim or possessed extreme indifference as to whether he killed him.  *See, e.g.*, *Gribbins v. Commonwealth*, 483 S.W.3d 370, 376-77 (Ky. 2016).  The jury made that finding, and hence there was no *Apprendi* violation.

The district court's judgment is affirmed.