People v Jackson (2025 NY Slip Op 25010)

[*1]

People v Jackson

2025 NY Slip Op 25010

Decided on January 16, 2025

Supreme Court, Queens County

Yavinksky, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 16, 2025
Supreme Court, Queens County

The People of the State of New York

against
Lionel Jackson, Defendant.

Indictment No. 70454/2022

For Defendant: Judah Maltz, Esq.
For the People: Melinda Katz, District Attorney, Queens County
(ADA Katherine McCabe, of Counsel)
(ADA Adalgiza Rodamis, of Counsel)

Michael J. Yavinksky, J.

The Defendant, Lionel Jackson, has filed a motion (dated October 7, 2024) in which he has asked this Court to interpret the recent Supreme Court of the United States case of Erlinger v. United States, 602 U.S. 821, 144 S.Ct. 1840, 219 L.Ed.2d 451 (2024), as it relates to the persistent violent felony sentencing structure in the State of New York. The Defendant argues that the Supreme Court of the United States ruled in Erlinger that all facts, including a determination on the tolling of time between sentences served, subsequent periods of incarceration, and the incident date for the instant crimes the Defendant was convicted of, are facts that need to be put before a jury and proven beyond a reasonable doubt. Thus, because the tolling issue was not placed before a jury in this case, the New York persistent violent felony sentencing scheme is unconstitutional as applied to the Defendant, and the Defendant must be sentenced as a first-time violent felony offender. The People have filed an affirmation in opposition (dated November 12, 2024) in which they argue that New York's persistent violent felony sentencing structure remains constitutional as the Erlinger court specifically did not overturn its decision in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), where the Supreme Court had previously carved out an exception to what a sentencing judge can factually determine, which was a finding of the fact of a prior conviction. Upon consideration of the issues presented, this Court finds that the New York State persistent violent felony sentencing structure is constitutional, that the Supreme Court of the United States's holding in Erlinger did not change that, and that Mr. Jackson is eligible to be considered as a persistent violent felony offender if the People satisfy their burden under Criminal [*2]Procedure Law §§400.15 and 400.16. Thus, the Defendant's motion is DENIED.
I. Procedural History of This Case and the Defendant's Prior Convictions
On February 20, 2022, at approximately 9:10 PM, at 83-12 161st Street in Queens County, the Defendant burglarized the home of complainant Carlos Sabino by breaking a window and unlawfully entering his residence. Once inside, the Defendant removed the complainant's property and began putting it into large bags. The complainant received a security alert on his cell phone and immediately called the police. New York City Police Department (NYPD) officers responded to 83-12 161st Street and approached the home. Police Officer Jenna Alfano looked into the complainant's residence through a glass door, and observed the Defendant, who was wearing all black, inside. The Defendant then fled the home, hopped over a fence, and was apprehended in a nearby backyard. Police Officer Alfano identified the Defendant as being the same man who she had seen inside of the complainant's home. The keys for the complainant's safe were found in the Defendant's pants pocket. A backpack containing a screwdriver, gloves, and other items was recovered from the complainant's backyard, and the Defendant admitted that the backpack was his. Finally, the Defendant admitted to a detective that he had broken into the home through a rear window and wanted to take property. The Defendant was arrested and charged with Burglary in the Second Degree (PL §140.25), Possession of Burglar's Tools (PL §140.35), Criminal Mischief in the Fourth Degree (PL §145.00), and Criminal Possession of Stolen Property in the Fifth Degree (PL §165.40).
On March 16, 2022, the Defendant was arraigned in Part TAP-A on Queens County Indictment 70454/22 which charged him with Burglary in the Second Degree (PL §140.25), Possession of Burglar's Tools (PL §140.35), Criminal Mischief in the Fourth Degree (PL §145.00), and Criminal Possession of Stolen Property in the Fifth Degree (PL §165.40). On June 3, 2024, the Defendant proceeded to a jury trial which was presided over by this Court. On June 13, 2024, the Defendant was convicted of all four counts of the indictment.
The People contend that the Defendant qualifies as a persistent violent felony offender because he has "previously been subjected to two or more predicate violent felony convictions as defined in" PL §70.04(1)(b) (see PL §70.08[1][a]). Penal Law §70.04(1)(b) provides that a predicate violent felony conviction is a violent felony offense as defined in PL §70.02 for which a sentence must have been imposed not more than ten years before the commission of the felony of which the Defendant presently stands convicted provided that "any period of time during which the person was incarcerated for any reason between the time of commission of the previous felony and the time of commission of the present felony shall be excluded and such ten year period shall be extended by a period or periods equal to the time served under such incarceration" (PL §§70.04[1][b][i], [iv], and [v]). The People argue that the following convictions, which are violent felony offenses under PL §70.02, require that the Defendant be sentenced on this matter as a persistent violent felony offender:
1. Attempted Burglary in the Second Degree (PL §110/140.25).
Queens County Indictment 1064/1991
Date of Crime: February 13, 1991. Date of Sentence: July 8, 1991.
Sentence: 3 to 6 years of imprisonment.
2. Burglary in the Second Degree (PL §140.25).
Queens County Indictment 199/1999
Date of Crime: October 17, 1998. Date of Sentence: January 10, 2001.
Sentence: 17 years to life imprisonment.
3. Burglary in the Second Degree (PL §140.25).
Queens County Indictment 200/1999
Date of Crime: October 18, 1998. Date of Sentence: January 10, 2001.
Sentence: 17 years to life imprisonment.
4. Burglary in the Second Degree (PL §140.25).
Queens County Indictment 459/1999
Date of Crime: October 18, 1998. Date of Sentence: January 10, 2001.
Sentence: 17 years to life imprisonment.
5. Attempted Burglary in the Second Degree (PL §110/140.25).
Queens County Indictment 201/1999
Date of Crime: October 22, 1998. Date of Sentence: January 10, 2001.
Sentence: 17 years to life imprisonment.
6. Burglary in the Second Degree (PL §140.25)
Queens County Indictment 198/1999
Date of Crime: November 21, 1998. Date of Sentence: January 10, 2001.
Sentence: 17 years to life imprisonment. The Defendant's latter convictions (2 through 6 above), on which sentence was imposed on the same date - January 10, 2001, "do not constitute two or more predicate convictions since" those offenses were not committed "after sentence was imposed upon the" prior offense (People v Corselli, 128 AD2d 545, 512 NYS2d 478 [2d Dept 1987]; see CPL §70.04[1][b][ii] ["Sentence upon such prior conviction must have been imposed before commission of the present felony"]; People v Barclay, 201 AD2d 739, 608 NYS2d 315 [2d Dept 1994]). Therefore, the People also rely on the Defendant's conviction for Attempted Burglary in the Second Degree (PL §110/140.25) from July 8, 1991, as his first predicate violent felony offense with respect to their sentencing application for this case.
II. Erlinger v. United States Does Not Require a Jury Trial to Determine the Existence of Prior Convictions or the Dates of Incarceration or Release Related to Those Convictions.
There has been substantial historical discussion about the constitutional right to a jury trial and how that right must be protected by a sentencing court in a criminal case. In recent history, the issue became most prominently discussed by the Supreme Court of the United States when it decided Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In Apprendi, the Court struck down a New Jersey statutory sentencing scheme that permitted a judge to impose a higher level of punishment if it found, by a preponderance of the evidence, that a Defendant's motivation or "purpose" in unlawfully possessing a weapon was to intimidate the victim based upon a racial bias. (This, of course, followed a jury's verdict where, beyond a [*3]reasonable doubt, it was proven that the Defendant had unlawfully possessed a weapon.) In striking down the New Jersey statutes, the Supreme Court of the United States ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (id. at 490, 120 S.Ct. 2348).
In Apprendi, the U.S. Supreme Court discussed an exception they referenced — the fact of a prior conviction could be found by a sentencing judge, without a jury — which they had established before Apprendi in the case of Almendarez-Torres v. United States, supra. In Almendarez-Torres, the Court evaluated a federal statutory scheme that authorized a sentencing judge to impose a higher sentence to a previously deported alien who had unlawfully reentered the United States where that individual was initially deported due to a prior conviction for commission of an aggravated felony. The Court made clear that, in upholding the federal statutory scheme at issue, although "[a]n indictment must set forth each element of the crime that it charges . . . it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime" (Almendarez-Torres at 528, 118 S.Ct. 1219).
The New York Court of Appeals has addressed constitutional challenges to New York's persistent felony sentencing structure on several occasions under the theory that the sentencing structure violated the constitutional safeguards discussed in Apprendi and its progeny. Each time the Court of Appeals has addressed this issue it has found that New York's persistent felony sentencing structure was constitutional in that regard. For example, in People v Rosen, 96 NY2d 329, 728 NYS2d 407, 752 NE2d 844 (2001), the Court of Appeals rejected the Defendant's challenge to New York's persistent felony sentencing structure because it violated the constitutional protections outlined in Apprendi. In so ruling, the Court analyzed that:
Under New York law, to be sentenced as a persistent felony offender, the court must first conclude that defendant had previously been convicted of two or more felonies for which a sentence of over one year was imposed. Only after it has been established that defendant is a twice prior convicted felon may the sentencing court, based on the preponderance of the evidence, review "[m]atters pertaining to the defendant's history and character and the nature and circumstances of his criminal conduct * * * established by any relevant evidence, not legally privileged" to determine whether actually to issue an enhanced sentence (CPL §400.20[5]). It is clear from the foregoing statutory framework that the prior felony convictions are the sole determinate of whether a defendant is subject to enhanced sentencing as a persistent felony offender. Then, the court must consider other enumerated factors to determine whether it "is of the opinion that a persistent felony offender sentence is warranted" (CPL §400.20[9]).
(Rosen at 334-5, 410, 847). Further, the Court found that "the sentencing court [was] only fulfilling its traditional role — giving due consideration to agreed-upon factors — in determining an appropriate sentence within the permissible statutory range" (id., 728 NYS2d 407, 752 NE2d 844, citing People v Farrar, 52 NY2d 302, 305—6, 437 NYS2d 961, 419 NE2d 864 [1981]). "Defendant had no constitutional right to a jury trial to establish the facts of his prior felony convictions" (id., 728 NYS2d 407, 752 NE2d 844, citing Apprendi at 488, 120 S.Ct. 2348). Finally, the Court of Appeals interpreted Apprendi's holding to mean that "[t]he Supreme Court has clearly established that facts regarding "recidivism increasing the maximum penalty need not be so charged" (id. at 335, 728 NYS2d 407, 752 NE2d 844).
The Supreme Court of the United States has navigated a number of post-Apprendi challenges following Rosen which included a variety of challenges to both state and federal sentencing schemes (see Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 [2002]; Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531, 159 L.Ed.2d 403 [2004]; United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 [2005]; Cunnigham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 [2007]; Alleyne v. United States, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 [2013]; Descamps v. United States, 570 U.S. 254, 133 S.Ct. 2276, 186 L.Ed.2d 438 [2013]; Hurst v. Florida, 577 U.S. 92, 136 S.Ct. 616, 193 L.Ed.2d 504 [2016]), and without question each of those decisions have made their way into New York state appellate caselaw in challenges to a New York Defendant's sentencing under our persistent felony sentencing structure (see People v Rivera, 5 NY3d 61, 800 NYS2d 51, 833 NE2d 194 [2005]; People v Quinones, 12 NY3d 116, 879 NYS2d 1, 906 NE2d 1033 [2009]; People v Bell, 15 NY3d 935, 915 NYS2d 208, 940 NE2d 913 [2010]; People v Frazier, 16 NY3d 36, 916 NYS2d 574, 941 NE2d 1151 [2010]; People v Battles, 16 NY3d 54, 917 NYS2d 601, 942 NE2d 1026 [2010]; People v Giles, 24 NY3d 1066, 2 NYS3d 30, 25 NE3d 943 [2014]; People v Prindle, 29 NY3d 463, 58 NYS3d 280, 80 NE3d 1026 [2017]; People v Garvin, 30 NY3d 174, 66 NYS3d 161, 88 NE3d 319 [2017]). In each of those decisions, our Court of Appeals has found the persistent felony sentencing structure to be constitutional. While it appears that only Bell, supra, dealt with the persistent violent felony offender sentencing scheme, one common denominator running through all the Court of Appeals' decisions analyzing both portions of the persistent felony sentencing structure is that the exception to Apprendi found in Almendarez-Torres is applicable when evaluating the constitutionality of the New York's persistent felony sentencing scheme.
Interestingly, the Second Circuit Court of Appeals had an opportunity in 2010 to analyze the constitutionality of New York's persistent felony sentencing scheme in light of Apprendi and its progeny in Portolatin v Graham, 624 F3d 69 (2d Cir. 2010), cert denied 562 U.S. 1304, 131 S.Ct. 1693, 179 L.Ed.2d 646 (2011). While Portolatin analyzed New York's persistent felony sentencing structure, the Second Circuit did note the role that Almendarez-Torres played in its decision. The Second Circuit supported the New York Court of Appeals' conclusion that, under the Almendarez-Torres exception to Apprendi, the fact of a prior conviction was not required to be decided by a jury as they upheld New York's persistent felony sentencing scheme:
The exception for prior convictions preserved the Court's earlier holding in Almendarez—Torres v United States, which affirmed the constitutionality of the use of recidivism as a judicially determined "sentencing factor" authorizing an enhanced sentence. See 523 U.S. 224, 247, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). There, the Court rejected the argument that 8 U.S.C. §1326(b)(2) violated a defendant's right to a jury trial because it authorized an enhanced penalty for any alien caught reentering the United States after being deported, if the initial deportation "was subsequent to a conviction for commission of an aggravated felony." 8 USC §1326(b)(2); see id. at 226—28, 118 S.Ct. 1219, 140 L.Ed.2d 350. According to the Court, "the sentencing factor at issue here—recidivism—is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.
In reaffirming the constitutionality of the use of recidivism as a judicially-found sentencing factor, the Supreme Court has since emphasized that the existence of [*4]procedural safeguards embedded in prior criminal proceedings, as well as the lack of dispute or uncertainty as to the "fact" of a prior conviction, "mitigate[ ] the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing the punishment beyond the maximum of a statutory range." Apprendi, 530 U.S. at 488, 120 S.Ct. 2348, 147 L.Ed.2d 435 (emphasis added). To be sure, "[t]he Court's repeated emphasis on the distinctive significance of recidivism leaves no question that the Court regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing." Jones v. United States, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); see also Parke v. Raley, 506 U.S. 20, 26, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992) (acknowledging that recidivism has formed the basis for sentencing enhancements "dat[ing] back to colonial times," and that recidivist sentencing laws were "currently ... in effect in all 50 states")
(Portalatin at 80). Although not dispositive, the Portalatin court, just as the Court of Appeals has repeatedly done, acknowledged the existence of the Almendarez-Torres exception to Apprendi and that the New York State Court of Appeals' interpretation of that exception passed constitutional muster.
Then, on June 21, 2024, the U.S. Supreme Court decided Erlinger v. United States and held that "virtually 'any fact' that 'increases the prescribed range of penalties to which a criminal defendant is exposed' must be resolved by a unanimous jury beyond a reasonable doubt [or freely admitted in a guilty plea]" (Erlinger at 834, 144 S.Ct. 1840, quoting Apprendi at 490, 120 S.Ct. 2348). In Erlinger, the Supreme Court of the United States analyzed the enhanced federal sentencing scheme found in 18 USC § 924(e)(1), otherwise known as the Armed Career Criminal Act [ACCA]. That statute increased the maximum penalty a Defendant could face if the Defendant had three prior qualifying convictions that were "committed on occasions different from one another." Mr. Erlinger argued that, under an Apprendi analysis, the Fifth and Sixth Amendments entitled him to have a jury decide whether his burglaries occurred on different occasions or not, and the Supreme Court of the United States agreed. A jury was required to unanimously decide, beyond a reasonable doubt, whether Mr. Erlinger's ACCA predicates were "committed on occasions different from one another."
However, in striking down the judicial fact-finding that occurred in Mr. Erlinger's sentencing, the Supreme Court of the United States acknowledged that "[i]n Almendarez-Torres, the Court permitted a judge to undertake the job of finding the fact of a prior conviction — and that job alone" (id., 602 U.S. at 1853, 144 S.Ct. 1840). In considering what that entailed, the Court further analyzed that "to conduct the narrow inquiry Almendarez-Torres authorizes, a court may need to know the jurisdiction in which the defendant's crime occurred and its date in order to ascertain what legal elements the government had to prove to secure a conviction in that place at that time" (id., 602 U.S. at 1854, 144 S.Ct. 1840). In making that narrow inquiry, the Court acknowledged that a sentencing court may be called upon to review official records involving prior convictions (referred to by the U.S. Supreme Court as "Shepard documents") to determine the dates and elements of previous convictions. While making clear that there are constitutional limits on the use of such records, the Court explained that "[i]n particular, a judge may not use information in Shepard documents to decide 'what the defendant . . . actually d[id],' or the 'means' or 'manner' in which he committed his offense in order to increase the punishment to which he might be exposed" (id., 602 U.S. at 1855, 144 S.Ct. 1840, quoting Mathis v United [*5]States, 579 U.S. 500, 510-511, 136 S.Ct. 2243, 195 L.Ed.2d 604 [2016]).
It is hard to think of an area of New York state sentencing that has been litigated as much as the statutory scheme for persistent felony sentencing. Every single challenge to its constitutionality has failed, and yet not one reported case of appellate authority before Erlinger has found that the tolling provisions found in PL §§70.04(2)(b)(4) & (5) were constitutionally infirm under Apprendi. That is because the facts that must be decided by a jury under Apprendi are facts concerning the manner in which the instant or underlying offense was committed (see e.g. Mathis, 579 U.S. at 511—2, 136 S.Ct. 2243 ["That means a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense."]). However, the existence of a conviction — the "'who, what, when, and where' of a prior conviction", as it was referred to in People v Leon, 10 NY3d 122, 126, 855 NYS2d 38, 884 NE2d 1037 (2008) — need not be put before a jury as it is a fact which falls within the exception laid out by the U.S. Supreme Court in Almendarez-Torres. 
While it is true that the Erlinger court said "any fact" which increases a Defendant's sentence must be placed before a jury and proven beyond a reasonable doubt, it said so while explicitly (a) citing to Mathis, which emphasized that the "facts" which the Apprendi doctrine references to are facts involving the manner in which the Defendant committed a crime if it has an impact on sentencing, and (b) maintaining the Almendarez-Torres exception to the Apprendi rule ("No one in this case has asked us to revisit Almendarez-Torres. Nor is there need to do so today . . . It persists as a 'narrow exception' permitting judges to find only 'the fact of a prior conviction'" [Erlinger, 602 U.S. at 1853-4, 144 S.Ct. 1840, quoting Alleyne, supra]). It is, therefore, reasonable to presume that the Erlinger court did not mean to infer that facts falling within the Almendarez-Torres exception must now be placed before a jury and proven beyond a reasonable doubt. It is also reasonable to presume that, while the Erlinger court was very clear to not expand the Almendarez-Torres exception to Apprendi, it also gave no indication that it was expanding the Apprendi doctrine to include facts which are part of the mechanical operation of the criminal justice system such as the date that a Defendant may have been incarcerated (or was released from custody) for any constitutionally obtained conviction.
The date that a Defendant entered or was discharged from a correctional facility to serve a sentence, like the date that a conviction occurred, has nothing to do with the manner in which the underlying offense was committed which gave rise to the sentence in question. The interpretation the Defendant wishes this Court to adopt has never been articulated by the New York Court of Appeals in its post-Apprendi analysis, nor has the U.S. Supreme Court ever addressed this specific factual circumstance to the contrary in its post-Apprendi caselaw (while, again, continuing to acknowledge the existence of the Almendarez-Torres exception in Erlinger). [For an interesting analysis of this issue that this Court finds persuasive, see People v Miles, 5 Misc 3d 271, 283, 783 NYS2d 748 (NY Sup Ct, 2004), affd 49 AD3d 446, 853 NYS2d 548 (2008), lv denied 10 NY3d 867, 860 NYS2d 493, 890 NE2d 256 (2008) ("It is true that Apprendi does not precisely define which particular facts about a prior conviction need not be noticed in an indictment or established by a jury beyond a reasonable doubt. Nevertheless, as one court which has considered the issued has observed, certain facts about a conviction, such as the duration of the sentence and the length of a defendant's incarceration, would appear to be 'open, notorious and on a secure record, and are the types of records that may be judicially noticed.' [People v Cephas, (2003 NY Slip Op 51068(U)), at n. 11]. As such they are possessed of substantial trustworthiness, emanating as they do from official court and correctional records. [*6]More importantly, their establishment involves no exercise of discretionary judgement by the court, and relate neither to the manner and circumstances of the commission of the crime, nor to the character and background of the defendant."); see also, People v Rivera, 221 NYS3d 894, 2024 NY Slip Op 24278 (Sup Ct, NY Cty, October 28, 2024).]
The facts necessary to determine tolling under the New York State persistent violent felony sentencing scheme continue to fall within the Almendarez-Torres exception to Apprendi. The decision of the U.S. Supreme Court in Erlinger v. United States did not change that. Accordingly, the Defendant's motion to be sentenced as a first-time violent felony offender because of Erlinger v. United States is DENIED. CONCLUSION
In summary, the Defendant's motion to be sentenced as a first-time violent felony offender is DENIED.
Dated: January 16, 2025
Queens, New York
Michael J. Yavinsky, A.J.S.C.