WILKINSON, Circuit Judge,
concurring:
I am pleased to join Chief Judge Gregory’s fine opinion. It reaches the right result, and for the right reasons. The ACCA’s force clause covers acts of intimidation and a strong arm robbery is the quintessential act of intimidation—whether or not actual physical force is used. This was a point we made in United States v. McNeal, 818 F.3d 141 (4th Cir. 2016). I hope that the panel opinion will mark a turning point toward a more realistic application of the categorical approach, because all too often that approach has pushed criminal sentencing to the very last place *313 that sentencing ought to be, that is at an untenable remove ■ from facts on ■ the ground.
As refreshing as the panel’s analysis is, I write to express a general concern that the categorical approach to predicate crimes of violence is moving beyond what the Supreme Court originally anticipated. Its overactive application is undermining the efforts of Congress, the role of district courts in sentencing, and the public’s need for a sense of basic protection against the most violent forms of criminal behavior. While it need not be discarded, the categorical approach should be adapted to return to sentencing courts a greater measure of their historical discretion.
I.
It surprises me that we have arrived at this point, because in theory, the categorical approach makes a good deal of sense. I had high hopes for it. District courts would be spared the practical difficulties of probing the underlying conduct of predicate convictions. And the approach promised to strike a balance between exempting from sentencing enhancements defendants convicted of non-violent conduct and vindicating Congress’s desire to punish the most violent recidivists. But what was fine in theory has sometimes proven to be less so in practice.
For starters, the purported administrative benefits of the categorical approach have not always worked as advertised. Judges have simply swapped factual inquiries for an endless gauntlet of abstract legal questions. Consider the decisional costs: Courts must first construe the predicate crime, which requires combing through state court decisions and “peeking]” at various documents to discern whether each statutory phrase is a separate element or merely an alternative means of satisfying the element. See Mathis v. United States, — U.S. —, 136 S.Ct. 2243, 2256-57, 195 L.Ed.2d 604 (2016). After decoding the definition of the offense, courts must then assess whether “the minimum conduct criminalized” by the statutory elements “categorically fits” within the generic “federal offense that serves as a point of comparison.” Moncrieffe v. Holder, — U.S. —, 133 S.Ct. 1678, 1684, 185 L.Ed.2d 727 (2013). But because there is no agreed-upon metric for what constitutes a match, this inquiry also involves an exhaustive review of state law as courts search for a non-violent needle in a haystack or conjure up some hypothetical situation to demonstrate that the predicate state crime just might conceivably reach some presumably less culpable behavior outside the federal generic.
The Supreme Court has sensibly cautioned judges to use common sense in applying the categorical approach and not to indulge in imaginative flights. See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007). And yet the insistent injunction that we begin the inquiry with the presumption that the conviction “rested upon [nothing] more than the least of th[e] acts” criminalized, see Johnson v. United States, 559 U.S. 133, 137, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), virtually ensures that our legal imagination will be utilized to posit an outlier set of facts or scenarios. The upshot of this “counterintuitive” exercise, see Mathis, 136 S.Ct. at 2251, is that the categorical approach can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence.
The categorical approach, too aggressively applied, eviscerates Congress’s attempt to enhance penalties for violent recidivist behavior. The ACCA addresses the most culpable sector of the criminal population, the repeat offenders Congress *314 found responsible for the majority of violent crimes in America. H.R. Rep. No, 98-1073, at 1-3 (1984); S. Rep. No, 98-190, at 5-6 (1983). This is no rookie class of criminals. They are the exact opposite of those first-offense or non-violent offenders who are the focus of sensible sentencing reform efforts. Doctor, for instance, has been convicted of assault and battery of a police officer, domestic violence, strong arm robbery, and a series of drug distribution offenses. This cohort of offenders are those Congress unequivocally sought to “incapacitate.” H.R. Rep. No, 98-1073, at 2; S. Rep. No. 98-190, at 9. Yet the categorical approach has too often flipped this objective on its head, facilitating a regime that ostensibly seeks every possible opportunity to eschew recidivist punishment. Whatever Congress meant when it tethered the ACCA’s sentencing enhancement to prior “convictions,” see Taylor v. United States, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), it did not pass a statute aimed at violent acts only to have patently violent acts called by some other name.
Explanations of the categorical approach repeatedly advance its sentencing windfall as a necessary consequence. It does not matter that “a sentencing judge knows (or can easily discover) that the defendant carried out [a crime of violence].” See Mathis, 136 S.Ct. at 2251. “Whether the [defendant’s] actual conduct involved such facts is quite irrelevant.” Moncrieffe, 133 S.Ct. at 1684. The reasons for this contention are well-known and understandable, but I wonder if it is sustainable over the long term to have a criminal sentencing regime so frankly and explicitly at odds with reality-
I understand that the ACCA carries a mandatory minimum term, which already strips trial courts of a portion of their ability to craft an individualized sentence. But while one may certainly object to Congress’s overuse of mandatory mínimums, it does not follow that courts should double the damage by depriving sentencing judges of an additional measure of their discretion to find facts related to predicate convictions. Many of the arguments that critics legitimately level at the overuse of mandatory mínimums can likewise be raised against the overuse of the categorical approach—each removes much needed discretion from the sentencing court.
The most aggressive applications of the categorical approach have operated as another exclusionary rule that limits the ability of courts to see beyond the judicial sanctuary and to fashion an informed sentence. Even when the record starkly reveals that the predicate crime was committed in a violent manner, violent predators are thrown in the hopper with all other offenders because judges generally may not consider any facts underlying the predicate offense. The alluring theoretical terminology of the categorical approach has too often served to isolate us in a judicial bubble, sealed conveniently off from the real-life dangers that confront American citizens in their actual lives.
' This exclusion is simply contrary to the sentencing function, which relies on district judges to consider a broad swath of information bearing on the individual defendant’s “background, character, and conduct.” See 18 U.S.C. § 3661 (2012). In fact, “[n]o limitation shall be placed” on the consideration of such information. Id. The Sixth Amendment need not bar a judge from finding what a previous crime involved or guilty plea determined. See Mathis, 136 S.Ct. at 2258 (Kennedy, J., concurring) (“Apprendi .,. does not compel the elements based approach.”). Nonetheless, with an exclusive focus on elements, we have converted traditional questions of fact into byzantine questions *315 of law that amount almost to willful blindness to what the defendant actually did. The categorical approach thus increasingly transfers the sentencing function from the trial courts to appellate courts, a turf battle which the appellate courts may be equipped to win but at the expense of those whose ground-level view and fact-finding capacities were heretofore thought to be the heart of the sentencing function.
II.
This should not mean jettisoning. the categorical approach and its admitted advantages altogether, but rather loosening its present rigid grip upon criminal sentencing. The U.S. Sentencing Commission has already begun this process: in light of complaints that the doctrine was “cumbersome and overly legalistic,” it recently eliminated the categorical approach from many of the illegal reentry guidelines. See U.S. SENTENCING CoMM’N, AMENDMENTS TO the Sentencing Guidelines 26 (2016). As judges, there is a way to apply the categorical approach in a realistic manner that would serve its original and laudable purposes. The categorical approach need not be the exclusive standard. District courts should be free to apply it as the default inquiry, but should retain the discretion to consider the defendant’s actual conduct when it can be clearly derived from the record.
Four Justices have now expressed, albeit for varying reasons and to varying degrees, some uneasiness with aspects of the categorical approach. See Mathis, 136 S.Ct. at 2258 (Kennedy, J., concurring); id. at 2263-66 (Breyer, J., joined by Ginsburg, J., dissenting); id. at 2267-71 (Alito, J., dissenting). I recognize of course that four is not five, and we have an obligation to follow a strict elements-based inquiry so long as a majority of the Supreme Court adheres to it. The lower courts have attempted in good faith to do just that. See, e.g,, United States v. Parral-Dominguez, 794 F.3d 440 (4th Cir. 2015) (North Carolina conviction for knowingly discharging a firearm into an occupied building was not a crime of violence); United States v. Shell, 789 F.3d 335 (4th Cir. 2015) (North Carolina conviction for rape of a mentally disabled person was not a crime of violence); United States v. Torres-Miguel, 701 F.3d 165 (4th Cir. 2012) (California conviction for threatening to commit a crime “which will result in death or great bodily injury to another” was not a crime of violence); United States v. Hernandez-Montes, 831 F.3d 284 (5th Cir. 2016) (Florida attempted second-degree murder was not a crime of violence); United States v. Najera-Mendoza, 683 F.3d 627 (5th Cir. 2012) (Oklahoma kidnapping was not a crime of violence); United States v. McMurray, 653 F.3d 367 (6th Cir. 2011) (Tennessee aggravated assault was not a crime of violence); United States v. Jordan, 812 F.3d 1183 (8th Cir. 2016) (Arkansas conviction for aggravated assault creating a “substantial danger of death or serious physical injury” was not a crime of violence); United States v. Parnell, 818 F.3d 974 (9th Cir. 2016) (Massachusetts armed robbery was not a crime of violence); United States v. Cisneros, 826 F.3d 1190 (9th Cir. 2016) (Oregon first-degree burglary did not “categorically] match” generic burglary and was not a crime of violence); United States v. Madrid, 805 F.3d 1204 (10th Cir. 2015) (Texas conviction for aggravated sexual'assault of a child was not a crime of vio-lénce).
I do - not intend to fault the aforementioned eases. Whether one agrees with them or not (and I often have not), they conscientiously attempted, as they should have, to apply the categorical approach correctly. And yet hidden within their binding holdings are heinous and indisput *316 ably violent acts which sentencing courts might have found if only given the opportunity. The foregoing is no more than a smattering of cases that makes no attempt to be exhaustive, but it should serve to illustrate the windfall that many criminal defendants have ■ received from having their violent depredations on their fellow citizens obscured in what two experienced counsel have termed, perhaps too excitedly, “a morass of jurisprudential goo.” See Steven Kalar & Jodi Linker, Fed. Defenders Servs. Office, Glorious Goo: The Taylor/Shepard Categorical and Modified Categorioal Analyses 2 (2012) (“It is particularly glorious goo, because the confusion almost inevitably helps our clients.”). I acknowledge that the sentencing enterprise is a matter of endless disputation and perpetual difficulty. It is hard to get right. But the heart of the endeavor has historically been the sentencing courts’ fact-finding capability and guided legal discretion, and the rigid categorical approach to predicate crimes of violence has blown us far off course.
III.
There is a tension in the way that the Supreme Court is looking at the role of sentencing judges. One set of cases seeks to limit the fact-finding prerogative of trial courts, see Descamps 133 S.Ct. at 2283; Moncrieffe, 133 S.Ct. at 1684, while another seeks to expand it, see United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) (holding the Sentencing Guidelines advisory); Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (holding district court sentencing generally reviewable under an abuse of discretion standard). Yet although the categorical approach has diminished district court discretion on predicate crimes of violence under the ACCA and other recidivist sentencing enhancements, it is much to be hoped that district judges retain a large measure of discretion outside the ACCA and similar “crimes of violence” sentencing frameworks. In other words, notwithstanding the doubt that has sometimes been thrown .on the very notion of a crime of violence, does there remain a pathway for district courts to ensure that the worst behaviors are appropriately sanctioned?
I believe a pathway does exist, and it is one that fully respects, as it must, both the pronouncements of Congress and the emphatic support that Supreme Court decisions have given the superior sentencing vantage point of our trial judges. As I have noted, Congress and the Supreme Court have accorded a wide degree of latitude to trial judges, both in their capacity to find facts and to fashion an individualized sentence (subject of course to statutory máxi-mums and mínimums). Congress established a comprehensive set of objectives for sentencing courts to review in each case, see 18 U.S.C. § 3553(a) (2012), and prohibited any limitation on the information a court may consider, see 18 U.S.C. § 3661 (2012). Likewise, in major sentencing decisions following Booker, the Supreme Court has envisioned a scheme in which district courts exercise broad discretion. As the Court emphasized, “[t]he sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the [Sentencing] Commission or the appeals court.” Rita v. United States, 551 U.S. 338, 357-58, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). The trial court, therefore, is not bound by the advisory Sentencing Guidelines. Id at 355, 127 S.Ct. 2456. Rather, judges are empowered to make any number of factual determinations and conduct an “individualized assessment based on the facts presented.” Gall, 552 U.S. at 50, 128 S.Ct. 586.
Do trial courts then retain significant sentencing discretion? The signals are *317 mixed. The categorical approach is restrictive, and yet Gall is expansive. Outside the strictures of the ACCA and other recidivist enhancements that- apply the categorical approach to predicate crimes of violence, a district court’s fact-finding capabilities are not so constrained. While sentencing judges are confined to a narrow set of record documents when classifying predicate crimes for a sentencing ■enhancement, Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), there is no corresponding “limitation on the district’s court’s consideration of [factual descriptions of an offense] in crafting its sentence under § 3553(a).” United States v. Savillon-Matute, 636 F.3d 119, 124 n.8 (4th Cir. 2011); see also Booker, 543 U.S. at 233, 125 S.Ct. 738 (“For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.”).
Of course, the scope of a sentencing court’s discretion to delve into the facts underlying a conviction rendered in another forum has never been boundless. Federal sentencing proceedings are not the presumptive forum—unlike habeas corpus actions—for overturning prior convictions or entertaining constitutional challenges to them. See Custis v. United States, 511 U.S. 485, 497, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994). Yet because no comparable presumption attaches itself to the factual circumstances of prior criminal behavior— sentencing hearings are, after all, the designated vehicle for such inquiries—district courts have the option to assess the seriousness of past conduct if they so choose. Indeed, it would be the odd sentencing regime that requires a holistic view of the defendant to be sentenced, see 18 U.S.C. § 3553(a), and yet prevents district courts from finding that a present or prior crime was committed in a particularly violent manner.
IV.
Accordingly, as the district court sets about this discretionary exercise, it has various tools to impose a stricter sentence if it believes that the categorical approach is ignoring a violent criminal history or disserving the general aims of sentencing. To be sure, the' Guidelines “provide a framework or starting point” for the trial judge’s sentencing determination. See Freeman v. United States, 564 U.S. 522, 131 S.Ct. 2685, 2692, 180 L.Ed.2d 519 (2011). But the Guidelines are just a starting point: sentencing judges have two options for fashioning a sentence outside the advisory range. In describing the options, I apologize for accenting the already familiar, but these discretionary tools have a renewed salience in light of the restrictions elsewhere placed upon sentencing our most violent offenders and on the sentencing judge’s role. Although these alternate pathways will not repair the entire damage that I respectfully suggest a rigid categorical approach has done to congressional intent, it may allow a trial judge to reach an appropriate sentence by considering the very facts the categorical approach proscribes.
First, the Guidelines expressly provide for an upward departure if “rehable information indicates that the defendant’s criminal history category significantly un-derrepresents the seriousness” of the defendant’s criminal history or likelihood of recidivism. U.S. Sentencing Guidelines Manual § 4A1.3(a)(1) (U.S. Sentencing Comm’n 2015). Among the factors a court may consider are the factual circumstances and “nature of the prior offenses.” See id. cmt. n.2(B); see also United States v. Yahnke, 395 F.3d 823, 825 (8th Cir. *318 2005) (concluding that the “violent nature” of a prior conviction “support[ed] a finding that [defendant’s] criminal-history category substantially underrepresented the seriousness of his criminal history”). Our court, for instance, allows a district court to classify a defendant as a “de facto career offender” if the defendant’s previous crimes “were sufficiently analogous to qualifying [violent felonies] that they could be considered for all intents and purposes” a violent prior offense. See United States v. Lawrence, 349 F.3d 724, 726 (4th Cir. 2003). To aid its inquiry, the sentencing judge may consult presentence reports and consider the extent to which a defendant’s criminal history was violent. See United States v. Howard, 773 F.3d 519, 530 (4th Cir. 2014); Lawrence, 349 F.3d at 727-30.
Second, the district .court has the discretion to impose a sentence outside the Guidelines range if it finds that the § 3553(a) factors justify a variance sentence. See Gall, 552 U.S. at 50-51, 128 S.Ct. 586. Three of those factors are the “nature and circumstances of the offense and the history and characteristics of the defendant,” the need to “afford adequate deterrence,” and the need to “protect the public from further crimes of the defendant.” 18 U.S.C. § 3553(a)(1), (a)(2). Here too, the sentencing court may tailor its sentence to the nature of the defendant’s conduct, both past and present. There is no formal limit on the extent of a district judge’s discretion to deviate from the Guidelines. See Rita, 551 U.S. at 355, 127 S.Ct. 2456; United States v. Rivera-Santana, 668 F.3d 95, 106 (4th Cir. 2012). Nor is there any restriction on the trial court’s ability to make factual findings and probe into the circumstances underlying previous convictions. See United States v. Hargrove, 701 F.3d 156, 164 (4th Cir. 2012); United States v. Diosdado-Star, 630 F.3d 359, 367 (4th Cir. 2011). In the course of this probe; one which does not implicate the modified categorical approach, the fact that a document is not Shepard-approved may go more to the weight of the evidence than-to its admissibility. See U.S SENTENCING Guidelines Manual § 6A1.3(a) (U.S. Sentenoing Comm’n 2015) (“In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy.”).
Consistent with Gall’s appreciation that district courts are “in a superior position to find facts and judge their import,” all sentencing decisions—“whether inside, just outside, or significantly outside the Guidelines range”—are entitled to “due deference” from appellate courts. Gall, 552 U.S. at 39, 51, 128 S.Ct. 586. While a sentencing judge’s explanation for the sentence must “support the degree of the variance,” a district court need not find “extraordinary circumstances” to justify a deviation from the Guidelines. Id. at 47, 50, 128 S.Ct. 586. Rather, irrespective of the particulars of “the individual case,” a “deferential abuse-of-discretion standard of review” applies across the board. Id. at 52, 128 S.Ct. 586. Even when the district court calculates the Guidelines range incorrectly, appellate courts may find that the error is harmless if the evidence suggests that the sentencing judge would have .varied from the Guidelines , anyway and reached the exact same result. See Hargrove, 701 F.3d at 162; Savillon-Matute, 636 F.3d at 123-24.
In stressing the foregoing, I have once again stated only the obvious, but there are times when even the obvious needs to be said. The categorical approach might have increasingly committed the applica *319 tion of specified sentencing enhancements to the legal-rulings of appellate courts, but that does not mean that district courts are without recourse to ensure that basic sentencing objectives are respected and achieved. In other words, the district court may decide in the face of an inconclusive record to apply the categorical approach to predicate offenses, but it also should enjoy the discretion and the tools to craft a more individualized sentence when such would serve the ends of justice. Our standard of review under Gall remains a deferential one. I do not believe, 'therefore, that the Supreme Court, through its categorical approach, intended to incapacitate district courts and . require those courts to stand idly by and let dangerous individuals reenter society prematurely. Their' future victims may be nameless and faceless to us, but they will bear the brunt of violent acts in intensely personal ways.