NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0484n.06

No. 17-6191

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Sep 27, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| TOMMY M. SLAUGHTER, | ) |  |
| Defendant-Appellant. | ) |  |

BEFORE:     **GUY, BATCHELDER, and BUSH, Circuit Judges.**

**ALICE M. BATCHELDER, Circuit Judge**. Tommy Slaughter was convicted of possessing controlled substances and of being a felon in possession of a firearm. He appeals those convictions arguing that the district court erred by denying his motion to suppress evidence, by applying an ACCA sentencing enhancement, and by declining to adopt a jury instruction he requested.

Slaughter's appeal is without merit. The evidence that Slaughter seeks to suppress was gathered in a manner consistent with his rights under the Fourth Amendment. The version of second-degree Kentucky burglary under which Slaughter was convicted qualifies as a predicate offense under the ACCA. And the district court did not abuse its discretion by declining Slaughter's requested instruction because the Sixth Circuit does not recognize the legal defense he wanted to present to the jury. We **AFFIRM**.

**I.**

Around 10 p.m. on July 2, 2015, detectives were driving in an unmarked car down 19th street in the Russell-Portland neighborhood of Louisville. As they drove by a drive-through liquor store, they observed an African-American male—later identified as Diontray "Tray" Scott—walk up to a car waiting in line. Scott appeared to take something out of his pocket before leaning into the front passenger window of the car. The detectives suspected that they were observing a hand-to-hand narcotics transaction, and decided to investigate further.

The detectives pulled up to the car and exited their vehicle. Detective Todd Benzing approached the passenger side window and asked the occupants "how they were doing today." Benzing saw that Tommy Slaughter, sitting in the front passenger seat of the car, had his hand in his right pants' pocket. Benzing told him to "show his hands." Slaughter ignored this command, which Benzing repeated multiple times. Benzing then reached into the car and grabbed Slaughter by the wrist. With his other hand, Benzing patted down Slaughter's pocket and felt a gun. Benzing yelled "gun" to alert the other officers of the threat and pulled the gun out of Slaughter's pocket while Detective Jonathan Haywood pulled Slaughter out of the car. After patting Slaughter down, Haywood found three small bags of drugs (two bags of cocaine and one bag of heroin).

On November 5, 2015, the federal grand jury charged Slaughter with three criminal counts:

Count 1: knowingly and intentionally possessing with an intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C);

Count 2: knowingly and intentionally possessing with an intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C);

Count 3: being a felon and knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), (e).

The grand jury's indictment also noted that under 18 U.S.C. § 924(e), Slaughter would face a 15-year minimum sentence on Count 3 if he had three qualifying convictions.

Before trial, Slaughter moved to suppress the evidence used against him on the grounds that it stemmed from an unlawful search and seizure. The magistrate judge denied his motion, finding that the detectives had a reasonable and articulable suspicion to investigate, and, for their protection, to seize Slaughter's gun. The district court adopted the magistrate judge's findings.

At trial, Slaughter's girlfriend testified that she had been driving the car on the night Slaughter was arrested, and that a man unknown to her walked up to her car and "dropped" something ("[p]robably a gun") into the passenger-side window. Slaughter took the stand in his defense and testified that he did not have a gun before arriving at the liquor store drive-through, though he did admit that he knew Scott. Slaughter claimed that Scott, upon seeing the police approaching, threw the gun into the car; Slaughter later claimed that Scott actually put the gun into Slaughter's pocket. Slaughter asked the court to provide the jury with an instruction on the "fleeting or momentary possession" and "innocent possession" defenses. The district court rejected Slaughter's proposed instructions, both during trial and in its post-trial order denying Slaughter's motion for a new trial, because the instruction did not reflect the law of the Sixth Circuit. Instead, the district court instructed the jury that "[t]o establish actual possession, the Government must prove that the defendant had direct, physical control over the firearm and knew that he had control of it." The district court added that the knowledge requirement for gun possession meant that the United States had to prove Slaughter possessed the gun "voluntarily and intentionally and not because of mistake or accident." In his closing argument, Slaughter's counsel claimed, consistent with Slaughter's testimony, that Slaughter had possessed the gun for only a moment, and that such fleeting, unintentional possession did not violate the statute. The jury convicted Slaughter on the lesser-included offenses in Counts 1 & 2: "Possession of a Controlled Substance," and on the count of "Convicted Felon in Possession of a Firearm."

The presence report identified Slaughter as an armed career criminal subject to 18 U.S.C. § 924(e)'s enhanced statutory range of fifteen years' to life imprisonment. Slaughter objected, claiming that his Kentucky burglary convictions could not serve as predicate offenses under the Armed Career Criminal Act ("ACCA"). 18 U.S.C. § 924(e). The district court found that Kentucky second-degree burglary qualifies as an ACCA predicate offense because its elements were narrower, not broader, than ACCA burglary. § 924(e)(B)(ii). The court sentenced Slaughter to the statutory minimum of fifteen years of imprisonment.

Slaughter appeals his conviction and sentence, arguing that the district court erred by denying his motion to suppress the evidence and by finding that Kentucky burglary qualifies as an ACCA predicate, and abused its discretion by refusing to provide the jury with his proposed "fleeting or momentary possession" and "innocent possession" instructions.

## II.

*Slaughter's motion to suppress*. When a defendant appeals from a denial of a motion to suppress evidence, we review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Quinney*, 583 F.3d 891, 893 (6th Cir. 2009).

Slaughter argues that the detectives who seized and searched him did so in violation of his Fourth Amendment rights because they lacked reasonable suspicion when they seized him.[1] He points out that the detectives did not see Scott and Slaughter exchange drugs, money, or weapons. Instead they "simply observed a man standing next to the right front passenger door of a vehicle waiting in line at a drive-through liquor store." But at oral argument before this court Slaughter's counsel conceded that the detectives were justified in conducting a *Terry* stop, a brief detention of a person that must be based on reasonable suspicion. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968).

---

[1] For purposes of this appeal, we assume Slaughter was seized, as the district court found, when the unmarked police car pulled up to the car in which he sat. Slaughter makes no argument that the seizure occurred prior to this point.

Slaughter's suppression argument then shifted to a claim that by "immobilizing Tommy's hands and removing him from the vehicle . . . [and] ha[ving] him handcuffed in order to conduct a warrantless search," Benzing turned the encounter into an unconstitutional custodial arrest.

*Terry* itself refutes this argument. There, an officer with reasonable suspicion of an impending robbery approached three men who appeared to be casing a store.

> [The officer] identified himself as a police officer and asked for their names . . . When the men "mumbled something" in response to his inquiries, Officer McFadden grabbed petitioner Terry, spun him around so that they were facing the other two, with Terry between McFadden and the others, and patted down the outside of his clothing. In the left breast pocket of Terry's overcoat Officer McFadden felt a pistol.

*Terry*, 392 U.S. at 6-7. Officer McFadden removed the pistol, ordered all three men to face the wall with their hands raised, patted down the other men, and placed them under arrest. *Id*. at 7. The Supreme Court found Officer McFadden's conduct justified because McFadden was "entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing . . . in an attempt to discover weapons which might be used to assault him." *Id*. at 30.

This case is *Terry*, in all relevant respects. If Benzing had reasonable suspicion as he approached the car—and Slaughter's counsel conceded that he did—then he was justified in patting Slaughter down. Once he discovered the weapon "which might be used to assault him," he was justified in removing Slaughter from the car and placing him under arrest.

Our case law confirms this view of *Terry*. We have held that during *Terry* stops concerning narcotics transactions, officers are entitled—without probable cause—to remove suspects from a vehicle immediately and place them in handcuffs as a precaution. *See United States v. Marxen*, 410 F.3d 326, 332 (6th Cir. 2005).

Slaughter's argument to the contrary is unavailing. The cases Slaughter cites are inapposite. His principal case, *Ybarra v. Illinois*, held that "a person's mere propinquity to others

suspected of criminal activity does not, without more, give rise to probable cause to search that person." 444 U.S. 85, 91 (1979). Slaughter was not merely close to a person suspected by the detectives of criminal activity, Slaughter was himself suspected of criminal activity—the detectives believed that he was involved in a narcotics transaction.[2] Both the *Terry* stop and the precautionary arrest were valid.

*Slaughter's ACCA challenge*. The ACCA enumerates burglary as a "violent felony" that can enhance a defendant's felon-in-possession sentence. 18 U.S.C. §§ 924(e)(1), (e)(2)(B)(ii). "For the ACCA's purposes, however, not all burglaries are created equal." *United States v. Malone*, 889 F.3d 310, 311 (6th Cir. 2018). To qualify as a burglary for ACCA purposes, a state burglary offense must "sufficiently match the elements of generic burglary." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). If the elements of an offense "swe[ep] more broadly than generic burglary" then "no conviction under that law could count as an ACCA predicate." *Id.* at 2248-49.

Slaughter claims that Kentucky second-degree burglary "is broader than generic federal burglary because it criminalizes the act of enter[ing] a building *without* the intent to commit a crime but after entering, commit[ting] a felony offense and then *remain*[ing] in the building or dwelling." According to Slaughter, Kentucky burglary covers the case of a man innocently shopping for a necklace in a jewelry store who, upon observing $10,000 in cash unattended by the

---

[2] Slaughter cites other cases that do not help his cause. It is unclear what support Slaughter thinks he gleans from *Maryland v. King*—the case concerns a very different question of the reasonableness of buccal swabs taken for DNA samples. 569 U.S. 435, 447-48 (2013). And Slaughter cites *Gerstein v. Pugh*, which concerns "whether a person arrested and held for trial under a prosecutor's information is constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty." 420 U.S. 103, 105 (1975). That issue is not raised in this case, nor is it analogous.

register, steals the cash, and then continues to casually shop in the store to avoid suspicion. Such a burglary was not anticipated by federal generic burglary, says Slaughter.[3]

Even if Slaughter is right that the "innocent-entry" variant of Kentucky second-degree burglary cannot qualify as an ACCA predicate, that is immaterial here because the Kentucky second-degree burglary statute is divisible, and we can be certain that Slaughter was not convicted under "innocent-entry" version of Kentucky burglary.

*First*, the Kentucky statute is divisible. Kentucky second-degree burglary—"when, with the intent to commit a crime, [one] knowingly enters or remains unlawfully in a dwelling"—lists the elements "knowingly enters" and "remains unlawfully" disjunctively. Ky. Rev. Stat. § 511.030. By listing elements in the alternative, the statute "define[s] multiple crimes." *Mathis*, 136 S. Ct. at 2249. Slaughter's challenge to the overbreadth of Kentucky burglary is limited to the "remains unlawfully" variation. There is no claim that burglary criminalizing one who, "with the intent to commit a crime, . . . knowingly enters . . . a dwelling" is broader than the generic definition of burglary.

*Second*, using the modified categorical approach, a "peek" at Slaughter's plea agreement reveals that he was convicted under the "knowingly entered" version of burglary. *Id*. at 2256 (citation omitted); *see also Shepard v. United States*, 544 U.S. 13, 26 (2005). In his plea agreement for eight counts of second-degree burglary, Slaughter agreed to the following description of his offense: "The defendant . . . unlawfully entered buildings with the intent to commit a crime on

---

[3] And not without reason. Both treatises on burglary relied on by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990)—the case establishing the concept of federal generic burglary—appear to preclude "innocent entry" burglary. *See* Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.13 (1986); American Law Institute, Model Penal Code § 221.1 (1980).

[more than three occasions].” The elements underlying Slaughter's burglary conviction are not broader than federal generic burglary. Slaughter's challenge to his ACCA enhancement fails.[4]

*Slaughter's requested jury instruction.* We review for abuse of discretion a challenge to a district court's choice of jury instructions. *United States v. Jones*, 403 F.3d 817, 821 (6th Cir. 2005). We do not reverse a district court for refusing to give an instruction when the proposed instruction does not correctly state the law. *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991). That is the case here. Slaughter cannot show that his requested instruction is a correct statement of applicable federal law because, as he admits, it is a defense adopted only by the D.C. Circuit. The district court did not abuse its discretion.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

---

[4] Slaughter also argues that applying an ACCA enhancement based on Kentucky's burglary statute “violates Due Process Notice and/or [the] Equal Protection Clause” because “similar individuals prosecuted in Iowa,” who engage in the same conduct that Slaughter did, are not prosecuted. We have rejected this argument. *United States v. Coleman*, 705 F. App'x 454, 456 (6th Cir. 2017) (per curiam) (collecting cases).