**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3416
_____

UNITED STATES OF AMERICA


v.


PERMAESHWAR SINGH,
                                        Appellant


_____


On Appeal from United States District Court
for the Middle District of Pennsylvania
(District Court No. 4-15-cr-0028-011)
District Judge: Honorable Matthew W. Brann
_____


Argued Pursuant to Third Circuit L.A.R. 34.1(a)
May 23, 2019
_____


Before: McKEE, SHWARTZ, and FUENTES, *Circuit Judges*.

(Opinion filed:  August 6, 2019)

Jenny P. Roberts, Esq.
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503
          *Counsel for Appellee*

George J. Rocktashel, Esq. [Argued]
Office of United States Attorney
240 West Third Street

Suite 316
Williamsport, PA 17701
          *Counsel for Appellee*

Kimberly R. Brunson, Esq. [Argued]
Office of Federal Public Defender
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222
          *Counsel for Appellant*

Jose C. Campos, Esq.
Hugh Campos
1845 Walnut Street
Suite 932
Philadelphia, PA 19103
          *Counsel for Appellant*

_____

OPINION*

McKEE, *Circuit Judge.*

Permaeshwar Singh appeals the district court's judgment of sentence that was imposed following his guilty plea. Though Singh's crime of conviction, the "controlled substance" provision of N.Y. Penal Law § 220.06, features the same elements as the generic federal offense, and the New York statute outlaws one substance that federal law does not, chorionic gonadotropin, the district court did not have the opportunity to

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

determine whether there is a realistic probability that New York would prosecute anyone under § 220.06(1) for possession of chorionic gonadotropin. We will therefore remand for the district court to make this determination.

## I.

The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Because Singh admits that he did not challenge the classification of the "controlled substance" provision of N.Y. Penal Law § 220.06 as a predicate offense for purposes of the career criminal sentence enhancement before the district court, we review for plain error. Under plain-error review, we must reverse if (1) there was an "error;" (2) the error was "plain;" (3) it "affect[ed] substantial rights;" and (4) not correcting the error would "seriously affect[] the fairness, integrity or public reputation of judicial proceedings."[1] The defendant, and not the Government, bears the burden of persuasion under plain error review.[2]

## II.

At issue here is the district court's determination that Singh qualifies as a career offender under U.S.S.G. § 4B1.1. Under the guidelines, "a defendant is a career offender if . . . the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."[3] The district court ruled that Singh's conviction for violating N.Y. Penal Law § 220.06 qualified as a "controlled substance offense" under

---

[1] *United States v. Olano*, 507 U.S. 725, 732 (1993) (quoting *United States v. Young*, 47 U.S. 1, 15 (1985)); Fed. R. Crim. P. 52(b).
[2] *Olano*, 507 U.S. at 734.
[3] U.S. Sentencing Guidelines Manual § 4B1.1(a).

U.S.S.G. §§ 4B1.1 and 4B1.2(b). At sentencing, Singh did not challenge this characterization of § 220.06. Instead, he argued that his convictions for attempted assault and possession of a controlled substance in violation of § 220.06 should be counted as a single conviction for purposes of § 4B1.1. The district court correctly rejected this argument. "Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)."[4]

Abandoning that argument, Singh now contends that the subsection of 220.06 that he was convicted under does not qualify as a "controlled substance offense" for the purposes of the federal sentencing guidelines. He argues N.Y. Penal Law § 220.06 is a divisible statute that must be analyzed using the modified categorical approach, that he was convicted under subsection (1) of N.Y. Penal Law §220.06, and that because this subsection criminalizes more conduct than its federal counterpart, it cannot be used as a predicate under U.S.S.G. § 4B1.1.

III.

Generally, courts apply the categorical approach to determine whether a prior state conviction is a "controlled substance offense" for sentencing guidelines purposes.[5] In applying the categorical approach, a court is required to ignore the "facts," which are

---

[4] *Id.* § 4A1.2(a)(2).
[5] *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

"mere real-world things–extraneous to the crime's legal requirements," and focus instead "solely on whether the elements of the crime of conviction sufficiently match."[6] Elements are the "constituent parts" of a crime's legal definition–the things the "prosecution must prove to sustain a conviction."[7] But facts are "circumstances," events that have no legal effect or consequence on the conviction.[8] When the "elements" of a state and federal law match, the state law can serve as a predicate offense for purposes of the sentencing guidelines.[9] Otherwise, the state statute sweeps more broadly and "no conviction under that law could count" as a § 4B1.1 predicate.[10]

"The comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime."[11] But "[a] single statute may list elements in the alternative, and thereby define multiple crimes."[12] Such a scenario requires the application of the modified categorical approach, which requires a sentencing court to determine "which of the alternative elements listed . . . was integral to the defendant's conviction."[13] The modified categorical approach allows a court to examine a limited number of documents to determine what crime, with what elements, a defendant was convicted of.[14] But the

---

[6] *Id.*

[7] *Id.* (citations and internal quotations omitted).

[8] *Id.* (citations and internal quotations omitted).

[9] *United States v. Brown*, 765 F. 3d 185, 189 (3d Cir. 2014).

[10] *Mathis*, 136 S. Ct. at 2249.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *See, e.g.*, *Shepard v. United States*, 544 U.S. 13, 26 (2005).

modified categorical approach still "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime."[15] Therefore, as with the categorical approach, a "defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense."[16]

N.Y. Penal Law § 220.06 is divisible.[17] The statute is broken into eight different subsections, creating eight different offenses.[18] For purposes of federal sentencing, some of these offenses as written are more serious than others. For example, in *Henriquez* a defendant was charged under § 220.06. The court consulted *Shepard* documents to determine that the defendant pleaded guilty for a violation of subsection (5) of the statute, which criminalizes the possession of cocaine that weighs 500 milligrams or more.[19] There, the court correctly concluded that an analysis of subsection (5) under the modified categorical approach established that Henriquez had been convicted for the possession of cocaine, a controlled substance under federal law. But an analysis of subsection (1), leads us to a different conclusion.

*Shepard* documents reveal that Singh was convicted under the first provision of the statute, which states that a person is guilty of a class D felony of criminal possession of a controlled substance in the fifth degree when he or she knowingly and unlawfully

---

[15] *Descamps v. United States*, 570 U.S. 254, 263 (2013).
[16] *See Mathis*, 136 S. Ct. at 2251.
[17] *See Henriquez v. Sessions*, 890 F.3d 70, 72 (2d Cir. 2018).
[18] *See Mathis*, 136 S. Ct. at 2249 (California burglary law "prohibited 'the lawful entry or the unlawful entry' of a premises with intent to steal, so as to create two different offenses, one more serious than the other").
[19] *Henriquez*, 890 F.3d at 72.

posesses "a controlled substance with intent to sell it."[20] New York law at the time of

Singh's conviction had a broader definition of a controlled substance than its federal

counterpart. New York law defined a "controlled substance" as "any substance listed in

schedule I, II, II, IV, or V of section thirty-three hundred six of the public health law

other than marihuana."[21] New York's Schedule II included chorionic gonadotropin as a

prohibited drug.[22] The New York prohibition against chorionic gonadotropin extends

beyond the substances prohibited by the Federal Controlled Substances Act.[23] The

"controlled substance" provision of § 220.06 is therefore more broad than its federal

counterpart because it criminalizes the possession of more substances than the federal

law. Further, a prosecutor is not required to prove which drug a person alleged to have

violated the first provision of § 220.06 possessed, as the substance is a means of

commission, rather than an element of the crime.[24]

However, to conclusively demonstrate that first provision of § 220.06 cannot serve

as a predicate offense under § 4B1.1, Singh must also show a realistic probability that

New York would prosecute someone under § 220.06(1) for possession with intent to sell

chorionic gonadotropin. In Gonzales v. Duenas-Alvarez, the Supreme Court held that it

takes "more than the application of legal imagination" to find that a state law criminalizes

---

[20] N.Y. Penal Law § 220.06 (McKinney 2004).

[21] *Id.* § 220.00(5) (McKinney 2004).

[22] *See* N.Y. Public Health Law § 3306, Schedule II(j) (listing any material, compound, mixture, or preparation which contains any amount of chorionic gonadotropin).

[23] 21 U.S.C. § 812.

[24] *See People v. Gagnier*, 146 A.D.3d 1019, 1021 (N.Y. App. Div. 2017).

conduct outside the generic federal definition of the crime.[25]  Instead, such a finding "requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."[26]  "A defendant may establish such a probability by showing that the state statute was so applied in his or her own case or by pointing to other cases in which the state courts applied the statute in a non-generic fashion."[27]

The parties did not raise this issue with the district court and thus did not present it with evidence upon which it could make this determination.  We will therefore remand for the district court to determine whether there is a realistic probability that New York would prosecute someone for possessing with intent to sell chorionic gonadotropin in violation of N.Y. Penal Law § 220.06(1).  If the Court finds a realistic probability of such prosecution, then the first provision of § 220.06 cannot serve as a predicate offense under § 4B1.1, and the Court should resentence Singh.  If there is no such realistic probability, the Court can maintain the sentence it previously imposed.

## IV.

For the foregoing reasons, we will remand for proceedings in accordance with this opinion.

---

[25] 549 U.S. 183, 193 (2007).

[26] *Id.*

[27] *United States v. Daniels*, 915 F.3d 148, 151 (3d Cir. 2019).

8