Filed 5/27/25  P. v. Hopkins CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WILLIAM JACK HOPKINS, <br><br> Defendant and Appellant. | F087877 <br><br> (Super. Ct. No. SF019655A) <br><br> **OPINION** |

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  John R. Brownlee, Judge.

Michele A. Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Jessica Anne Eros, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Peña, Acting P. J., Smith, J. and De Santos, J.

## INTRODUCTION

Appellant William Jack Hopkins was convicted of 13 counts following a three-day crime spree.  In his original appeal, we concluded that Hopkins was entitled to a new sentencing hearing following the enactment of Senate Bill No. 567 (2021-2022 Reg. Sess.) (SB 567) and Assembly Bill No. 518 (2021-2022 Reg. Sess.) (AB 518), which went into effect after he was sentenced but before his judgment of conviction became final.  The instant appeal follows from that resentencing hearing.

On appeal, appointed counsel for Hopkins asked this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)

Following review of the record, we requested the parties brief the following issues:  First, "Were the aggravating factors the trial court relied upon to impose the upper-term sentence on many of the counts properly established?  (*See Erlinger v. United States* (2024) 602 U.S. 821.)"  Second, "Assuming error, was it harmless under *Chapman v. California* (1967) 386 U.S. 18, 24?  (See *People v. Lynch* (2024) 16 Cal.5th 730.)"

The Attorney General concedes that the trial court imposed upper-term sentences on multiple counts based on aggravating factors that were not established in compliance with SB 567, and further acknowledges that the error was not harmless.  We agree.  Accordingly, we will vacate Hopkins's sentence and remand the matter to the trial court for a new sentencing hearing.

## FACTUAL AND PROCEDURAL HISTORY

On July 21, 2021, Hopkins was convicted by jury of the following crimes: kidnapping with the intent to commit rape (Pen Code,[1] § 209, subd. (b)(1), count 1), forcible rape (§ 261, subd. (a)(2), count 2), assault with the intent to commit sodomy

---

[1] All further undefined statutory citations are to the Penal Code unless otherwise indicated.

(§§ 220, 286, subd. (c)(2), count 3), two counts of robbery (§ 212.5, subd. (c), counts 4 & 5), two counts of criminal threats (§ 422, counts 6 & 7), two counts of felon in possession of a firearm (§ 29800, subd. (a)(1), counts 8 & 11), assault with a firearm (§ 245, subd. (a)(2), count 9), attempted unlawful taking of a motor vehicle (§ 664; Veh. Code, § 10851, subd. (a), count 10), and two counts of receipt of a stolen motor vehicle (§ 496d, subd. (a), counts 14 & 15). The jury further found true that Hopkins used a firearm in the commission of some of these offenses (§§ 12022.53, subd. (b), 12022.5, subd. (a), counts 1-7, 10 & 12), and as to count 2, that Hopkins kidnapped the victim (§ 667.61, subd. (d)(2)), personally used a firearm in the commission of the offense (§ 667.61, subd. (e)(3)), and that he tied or bound the victim (§ 667.61, subd. (e)(5)).

On December 8, 2021, the trial court sentenced Hopkins to prison for indeterminate terms of life with the possibility of parole, plus 15 years to life, and an aggregate determinate term of 60 years four months.

On November 13, 2023, on appeal from Hopkins's judgment of conviction, this court vacated his sentence and remanded the matter back to the lower court for a new sentencing hearing. (See *People v. Hopkins* (Nov. 13, 2023, F083652) [nonpub. opn.].)

On April 11, 2024, the trial court resentenced Hopkins to an indeterminate term of 25 years to life, plus an aggregate determinate term of 48 years four months.

### The Underlying Conviction

The following statement of facts are taken from this court's opinion in *People v. Hopkins*, *supra*, F083652:

### June 13, 2019 (Counts 9-11)

J.R. lived across the street from a funeral home. On June 13, 2019, around 11:30 p.m., J.R. and his friend, Q.A., were in J.R.'s backyard hanging out when they heard a loud bang. They walked toward the funeral home to investigate. Once there, they saw a man wearing sunglasses, a hoodie, and a face covering going through a truck.

When J.R. and Q.A. got within five to 10 feet of the truck, the man noticed them, pulled out a "little pistol," and told them to "scoot." J.R. and Q.A. fled.

The truck, a Ford F-350, belonged to R.W., who owned and managed the funeral home. The sides of the truck had been damaged, the ignition collar was removed, and the ignition switch had been tampered with.

### June 14, 2019 (Counts 1-8)

On June 14, 2019, at around 5:30 a.m., A.T. and his girlfriend, Jane Doe, were parked near a cemetery in Shafter. Jane Doe fell asleep. A.T. got out of the car to relieve himself.

Armed with a pistol, Hopkins walked toward A.T., pointed the gun at him, and threatened, " '[p]ut your hands up or I'm going to shoot you.' " A.T. described the gun as black and silver-colored pistol, "possibly a .22-caliber Ruger." Hopkins instructed A.T. not to look at him and told A.T. to empty his pockets.

Jane Doe awoke and got out of the car. Hopkins pointed the gun at A.T. and Jane Doe. He demanded, " 'Give me the fucking money or I'm going to shoot you.' "

A.T. did not have money on him. He gave Hopkins the money from Jane Doe's purse. Hopkins told A.T. to move to the back of the car or he would shoot Jane Doe. As Hopkins pointed the gun at Jane Doe, he demanded that A.T. get in the trunk and threatened to shoot Jane Doe. Jane Doe closed the trunk.

Hopkins told Jane Doe that he would drive to a point where he (Hopkins) could get away and A.T. would not be able to chase him. He assured Jane Doe that he would let her go at that point, and that nothing else would happen to her.

A.T. opened the trunk from the inside and began to get out. Hopkins told A.T. to get back inside or he would shoot Jane Doe. A.T. complied.

As they walked into an orchard, Hopkins put a sack over Jane Doe's head, which prevented her from seeing anything. Hopkins threatened to shoot her if she did anything. Hopkins then led her into a truck. He had Jane Doe sit on top of him with her hands in her pants and drove off.

Approximately 10 to 15 minutes later, Hopkins stopped the truck. Hopkins taped the sack on Jane Doe's head and taped her hands together behind her back. He laid her down on the dirt ground, took off her sweats, underwear and shoes,

and inserted his penis into her vagina for "a minute or so." A short time later, he attempted to insert his penis into her anus. Jane Doe kept wiggling her legs and told Hopkins that it hurt. Hopkins stopped.

Either before or after Hopkins attempted to sodomize Jane Doe, Hopkins stood up and began masturbating. He splashed water on Jane Doe, in between her legs, and told her that "he was just washing it off."

Hopkins put Jane Doe's clothes back on her. He told her that he had her identification and made her recite her home address. After she complied, Hopkins put Jane back into the truck and began driving. He drove for a short distance before instructing her to get out of the truck.

Hopkins threatened to "skin [her] alive" if Jane Doe went to the police or told anyone about what had occurred. He told her to count to 100, removed the bag covering her head, and informed her that if she walked in a straight line, she would reach the same location as A.T. When Jane Doe opened her eyes, she was in the orchard. She continued walking until she eventually found a man who called the police for her.

### June 23, 2018 (Counts 14 & 15)

On June 23, 2019, about 7:00 a.m., E.A., a foreman at an agriculture business, saw a Dodge 2500 truck with a trailer attached, driving through the business's vineyard. Believing that the truck was going to dump tires in the area, E.A. pursued it. The Dodge truck failed to turn at the end of a road and crashed into a reservoir.

A passenger inside the truck fled through an orchard nearby. The driver ran into the vineyards, returned to the truck to retrieve a black bag, and then ran into the orchard. The truck and the trailer attached to it were both stolen.

Hopkins's fingerprints and DNA were found in the Dodge truck. Hopkins admitted to being a passenger inside the Dodge truck when it crashed into the reservoir. He further admitted having known that the truck was stolen because the driver told Hopkins that it was.

### Hopkins's Prior Convictions

The parties stipulated that Hopkins had previously been convicted of a felony that prohibits him from owning, purchasing, receiving, or possessing a firearm. At trial,

Hopkins admitted that he had been convicted of two felonies in 2012, and one felony in 2015, 2016, and 2017.

### *The Resentencing Hearing on Remand*

On April 11, 2024, Hopkins's resentencing hearing was held. At the hearing, trial counsel argued that the aggravating factors noted in the probation officer's report had not been plead and proven in conformity with Senate Bill No. 567. Counsel asserted that "without being able to make such findings, there's strictly circumstances in mitigation and no circumstances in aggravation." Hopkins addressed the court, detailing his prior history of substance abuse and criminal activity as a juvenile. Trial counsel further elaborated on Hopkins's background, claiming that Hopkins had been abused by staff at the California Youth Authority (CYA), and that Hopkins suffered from post-traumatic stress disorder, which Hopkins treated with drugs.

The prosecutor acknowledged that there were aggravating factors not plead and proven at the time of Hopkins's trial and his original sentencing hearing. However, the prosecutor argued that the trial court was permitted to consider the probation officer's report and the defendant's criminal history in evaluating aggravating factors. According to the probation report, Hopkins had an extensive record that included seven prior grants of misdemeanor probation, one grant of felony probation, five terms of parole, and a grant of CYA parole—all of which were unsatisfactorily completed. He also had seven prior prison commitments and a commitment to the CYA, and was on Post Release Community Supervision at the time of his commitment offense. Although it is unclear whether the rap sheet itself was formally admitted into evidence, the existence and nature of Hopkins's prior convictions were either pled or stipulated to, and were therefore, properly before the court.

Given this history, the court could reasonably find that Hopkins's prior performance on supervision was poor and that his criminal record demonstrated a persistent pattern of criminal activity. Further, the crimes in this case were especially dangerous and reflected a serious threat to public safety; Hopkins had engaged in a

violent crime spree, committing armed assaults, attempted and completed vehicle thefts, robberies, and criminal threats. In light of the severity of Hopkins's offenses, his repeated failures under supervision, and his lengthy criminal background, the prosecutor asserted that imposition of the upper term was both warranted and supported by the record.

The parties discussed evidence in the record pertaining to Hopkins's prior convictions, and whether the court could rely upon that evidence in imposing an aggravated term. Hopkins had previously stipulated to having suffered four prior felony convictions. The prosecutor further asserted that the court was entitled to rely upon the probation officer's report.

The trial court found that Hopkins had an extensive criminal history, including numerous adult convictions and sustained juvenile petitions. (See Cal. Rules of Court, rule 4.421(b)(2).) In addition, Hopkins's prior performance on various forms of supervision—juvenile probation, misdemeanor and felony probation, parole, and CYA parole—was unsatisfactory. (See Cal. Rules of Court, rule 4.421(b)(5).) The court further observed that Hopkins had served seven prior prison terms and a CYA commitment and was on Post Release Community Supervision at the time of the current offense. (See Cal. Rules of Court, rule 4.421(b)(4).)

Hopkins was sentenced to an aggregate prison term of 25 years to life (count 2), and a determinate term of 38 years four months, including, the upper term on counts 3, 4, 6 through 9, and 11.

## DISCUSSION

### I.    Remand for a Resentencing Hearing is Required

Following the filing of appellant counsel's *Wende* brief, we ordered the parties to brief the following issues: First, "(1) Were the aggravating factors the trial court relied upon to impose the upper-term sentence on many of the counts properly established? (See *Erlinger v. United States* (2024) 602 U.S. 821.)." Second, "Assuming error, was it

7.

harmless under *Chapman v. California* (1967) 386 U.S. 18, 24?  (See *People v. Lynch* (2024) 16 Cal.5th 730.)"

The Attorney General concedes that the upper term sentences imposed on counts 3, 4, 6 through 9, and 11 were improperly imposed, and that remand for a resentencing hearing is required.[2]  For the reasons discussed below, we agree.

### A.     SB 567

SB 567 amended section 1170 by establishing the middle term as the presumptive sentence when a statute specifies three possible terms of imprisonment, unless specific exceptions apply.  As amended, section 1170 now states, in relevant part:

> "(b)(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2).
>
> "(2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. "(3) Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury. This paragraph does not apply to enhancements imposed on prior convictions."  (§ 1170, subd. (b)(1)-(3).)

---

[2]  The Attorney General does not contend that Hopkins forfeited this sentencing issue by failing to object to imposition of the upper term sentences below.  Although we are skeptical that SB 567's requirements are subject to forfeiture, we need not resolve that issue here.  The record demonstrates that trial counsel put the court on notice that the relevant aggravating factors had not been plead or proven in conformity with SB 567. We find the issue preserved for review under the circumstances.

### B. Analysis

#### 1. The Aggravating Factors Relied Upon by the Trial Court to Impose the Upper Term Were Not Properly Established

"[U]nder the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham v. California* (2007) 549 U.S. 270, 281; see also *Lynch*, *supra*, 16 Cal.5th at p. 742.) As the United States Supreme Court has made clear, aside from the limited exception for the fact of a prior conviction (and its supporting legal elements), "[v]irtually 'any fact' that ' "increase[s] the prescribed range of penalties to which a criminal defendant is exposed" ' must be resolved by a unanimous jury beyond a reasonable doubt (or freely admitted in a guilty plea)." (*Erlinger*, *supra*, 602 U.S. at p. 834.) Thus, "a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' " (*Id.* at p. 838, quoting *Mathis v. United States* (2016) 579 U.S. 500, 511-512.)

As the Attorney General correctly observes, following *Erlinger*, a sentencing judge may no longer rely upon records of prior convictions to determine whether (1) the defendant's prior convictions were numerous or of increasing seriousness, (2) the defendant's prior performance on supervised release was unsatisfactory, (3) the defendant served a prior prison term, and (4) the defendant committed the offense while on supervised release. (*Erlinger, supra*, 602 U.S. at pp. 835-838.) Absent a stipulation from the defendant, these factors must be submitted to a jury and proven beyond a reasonable doubt.[3]

---

[3] Before the United States Supreme Court's decision in *Erlinger*, our Supreme Court granted review in *People v. Wiley* (2023) 97 Cal.App.5th 676, review granted Mar. 12, 2024, S283326, to consider the scope of section 1170, subdivision (b)(3)'s exception permitting a trial court to consider "prior convictions." The issue under review is: "Did the sentencing court's consideration of circumstances in aggravation based on certified

As the parties acknowledge, Hopkins admitted to having prior convictions, but he did not admit to any additional facts. Consequently, the following aggravating circumstances were neither admitted by Hopkins nor found true by a jury beyond a reasonable doubt: that his prior convictions as an adult or sustained juvenile adjudications were numerous; that his performance on probation and parole was unsatisfactory; that he had served seven prior prison terms; and that he was on Post-Release Community Supervision at the time of the current offense.

In addition, the trial court relied on the probation officer's report in determining the appropriate sentence. A certified record of conviction was not admitted into evidence. Although a probation report may inform the court's understanding of a defendant's background, it does not satisfy the evidentiary requirements of SB 567 for establishing aggravating factors. It therefore appears that the court adopted the aggravating circumstances as set forth in the probation report. Because the majority of the aggravating factors underlying the upper-term sentences were neither pleaded nor proven in conformity with statutory requirements, the imposition of upper terms on counts 3, 4, 6 through 9, and 11 was improper.

### 2. *The Error was Not Harmless*

Under section 1170, "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch, supra*, 16 Cal.5th at p. 768.) Such a violation is deemed prejudicial, and resentencing is required "unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper

records of prior convictions, beyond the bare fact of the convictions, violate ... section 1170[(b)(3)] or defendant's Sixth Amendment right to a jury trial?" Oral argument in *Wiley* was held on April 8, 2025, and a decision is expected imminently. Given the Attorney General's concession of prejudicial error in this case, we do not reach the issue pending in *Wiley*.

term sentence, or that those facts were otherwise proved true in compliance with current statutory requirements." (*Id.* at p. 768.) If any aggravating circumstance fails to meet this standard, "the defendant is entitled to a remand for resentencing." (*Ibid.*)

Given the inherently subjective nature of some of the aggravating facts relied upon by the trial court in imposing the upper term sentence, the Attorney General concedes that the error here was not harmless beyond a reasonable doubt. As our Supreme Court has previously explained, "[m]any of the aggravating circumstances described in the rules require an imprecise quantitative or comparative evaluation of the facts." (*People v. Sandoval* (2007) 41 Cal.4th 825, 840, superseded by statute as stated in *Lynch, supra*, 16 Cal.5th at p. 757.) " ' "[T]o the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court." ' " (*Ibid.*) Here, for instance, a reasonable trier of fact could disagree on the definition of "numerous" and whether Hopkins's prior convictions satisfy that definition.

Accordingly, because we cannot conclude beyond a reasonable doubt that a jury would have found true *all* of the aggravating factors relied upon by the trial court, we accept the parties' concession that remand for resentencing is required.

## DISPOSITION

The sentence is vacated. The trial court is directed to conduct a new sentencing hearing and pronounce judgment consistent with this opinion.

11.